

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-18-2003

# Nationwide Mutl Ins v. Riley

Precedential or Non-Precedential: Precedential

Docket No. 00-1961

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Nationwide Mutl Ins v. Riley" (2003). *2003 Decisions.* Paper 9.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/9

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed December 18, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1961

NATIONWIDE MUTUAL INSURANCE COMPANY,

v.

PAMELA RILEY,
Appellant

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action Nos. 99-cv-05141)
District Judge: Honorable Thomas N. O'Neill, Jr.

Argued May 13, 2003

Before: AMBRO, BECKER and STAPLETON, *Circuit Judges*

(Filed: December 18, 2003)

Neil Hoffman, Esquire
Frederic S. Karpf, Esquire (Argued)
Law Offices of Neil Hoffman
Buck Village Professional Commons
1200 Bustleton Pike - Suite 9
Feasterville, PA 19053

*Attorneys for Appellant*

Matthew S. Crosby, Esquire
Gregory S. Feather, Esquire
Handler, Henning & Rosenberg
1300 Linglestown Road
P.O. Box 1177
Harrisburg, PA 17108

Scott B. Cooper, Esquire (Argued)
Schmidt, Ronca & Kramer
209 State Street
Harrisburg, PA 17101

*Amicus Curiae for Appellant*
*Pennsylvania Trial Lawyers*
*Association*

James C. Haggerty, Esquire (Argued)
Swartz, Campbell & Detweiler
1601 Market Street, 35th Floor
Philadelphia, PA 19103

*Attorney for Appellee*

---

## OPINION OF THE COURT

AMBRO, *Circuit Judge*:

Nationwide Mutual Insurance Company ("Nationwide") filed suit for a declaratory judgment to determine its obligation, if any, to pay underinsured motorist benefits to Pamela Riley under her father's insurance policy. As we conclude that Nationwide is not so required, we affirm the District Court's decision to grant summary judgment to Nationwide.

## I. Facts and Procedural History

In July 1997 insurance agent P. Kowalewski issued Arthur Riley, Pamela Riley's father, a personal automobile insurance policy with Nationwide that provided underinsured motorist benefits[1] in the amount of $100,000

---

1. Underinsured motorist benefits, discussed further below, provide coverage in the event that an insured is involved in an accident with a tortfeasor who has inadequate liability coverage.

per person and $300,000 per accident. In September of that year the same agent issued Pamela a personal automobile insurance policy with Nationwide for her 1991 Volkswagon Jetta, which provided underinsured motorist benefits in the amount of $25,000 per person and $50,000 per accident.[2]

One month later a third party's vehicle ran a stop sign and struck Pamela's Jetta, resulting in her injury. She recovered $15,000—the liability limit of the third party's insurer (TICO)—as well as the maximum ($25,000) in underinsured motorist benefits under her own policy with Nationwide.

Pamela also claimed but was denied underinsured motorist benefits from Nationwide under her father's policy. The basis for her claim was the clause included in that policy providing that Nationwide "will pay compensatory damages including derivative claims, which are due by law to you or a relative from the owner or driver of an underinsured motorist vehicle because of bodily injury suffered by you or a relative." Nationwide denied her claim, stating that the household exclusion clause in her father's policy barred the recovery that would otherwise have been available to Pamela. That clause (with emphasis supplied) provided:

---

2. Riley signed a waiver when obtaining coverage for her own vehicle. By signing the waiver, she agreed as follows:

> rejecting stacked limits of underinsured motorists coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

When coverage is stacked, "[t]he limits of coverages available . . . shall be the sum of the limits for each motor vehicle as to which the injured person is an insured." 75 Pa. Cons. Stat. Ann. § 1738(a). Put simply, the colloquial word "stacked" (to add on or accumulate) has become an insurance term of art.

This coverage does not apply to:

[b]odily injury suffered while occupying a motor vehicle owned by you or a relative but *not insured for Underinsured Motorist coverage under this policy*; nor to bodily injury from being hit by any such motor vehicle.

Nationwide filed suit in October 1999 seeking a declaratory judgment to the effect that it was not required to pay underinsured motorist benefits to Pamela under the insurance policy issued to her father. The District Court ordered cross-motions for summary judgment to be filed. In May 2000 the District Court granted summary judgment to Nationwide, concluding that, by the terms of the household exclusion clause, Pamela was not entitled to recover under her father's policy. This appeal followed.[3]

We stayed the appeal pending the resolution of *Prudential Property & Casualty Insurance Company v. Colbert*, in which we certified to the Pennsylvania Supreme Court the question of the validity, under similar circumstances, of a household exclusion clause. On December 31, 2002, the Pennsylvania Supreme Court issued its opinion. *Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747 (Pa. 2002). Having considered the supplemental letters filed by the parties, we now conclude that we are bound by *Colbert* to affirm the District Court's decision.

## II. Discussion

Underinsured motorist insurance ("UIM") "is a first party coverage intended to supplement the inadequate motoring liability insurance of an at-fault tort-feasor." Theodore J. Smetak, *Underinsured Motorist Coverage in Minnesota: Old Precedents in a New Era*, 24 Wm. Mitchell L. Rev. 857, 859 (1998); *see also Paylor v. Hartford Ins. Co.*, 640 A.2d 1234, 1235-36 (Pa. 1994) (purpose of UIM is to protect an "insured (and his [or her] additional insureds) from the risk that a negligent driver of another vehicle will cause injury . . . and will have inadequate coverage to compensate for

---

3. We have appellate jurisdiction under 28 U.S.C. § 1291. Our review of a decision by the District Court to grant summary judgment is plenary. *Omnipoint Communications Enters. L.P. v. Newtown Township*, 219 F.3d 240, 242 (3d Cir. 2000).

the injuries caused by his [or her] negligence" (quoting *Wolgemuth v. Harleysville Mut. Ins. Co.*, 535 A.2d 1145, 1149 (Pa. Super. 1988))).

Under Pennsylvania's prior insurance scheme, the Commonwealth required motorists to carry uninsured, but not underinsured, motorist insurance. Pennsylvania No-Fault Motor Vehicle Insurance Act, 40 Pa. Cons. Stat. § 1009.101-1009.701 (1974) (repealed P.L. 26, No. 11, § 8(a) (Feb. 12, 1984)). As a result, individuals who were involved in accidents with tortfeasors driving uninsured vehicles would be able to recover on their own policies, but would not be able to recover were the tortfeasor merely to have underinsured his or her vehicle. *Paylor*, 640 A.2d at 1236 ("[C]laimants would find themselves in a better position were the tortfeasor's vehicle totally uninsured, rather than underinsured." (quoting *Davis v. Gov't Employees Ins. Co.*, 454 A.2d 973, 976 (Pa. 1982))).

The Pennsylvania legislature rectified this anomaly by passing the Motor Vehicle Financial Responsibility Law, 75 Pa. Cons. Stat. §§ 1701-1799.7 ("MVFRL"), which mandated the issuance of both uninsured and underinsured motorist coverage as part of every motor vehicle liability insurance policy issued in the Commonwealth. *Paylor*, 640 A.2d at 1236. In 1990, the MVFRL was amended to require that an insurance company continue to offer underinsured and uninsured motorist coverage, but to eliminate the requirement that an insured accept those coverages. *Id.* at 1236 n.1 (citing 75 Pa. Cons. Stat. § 1731(a)).

The MVFRL has presented the Pennsylvania courts with many issues "involving claimants' eligibility for underinsured motorists benefits and exclusionary clauses in automobile insurance policies." *Id.*; *see also, e.g., Windrim v. Nationwide Ins. Co.*, 641 A.2d 1154 (Pa. 1994); *Eichelman v. Nationwide Ins. Co.*, 711 A.2d 1006, 1009 (Pa. 1998); *Burstein v. Prudential Prop. and Cas. Ins. Co.*, 809 A.2d 204, 206 (2002); *Colbert*, 813 A.2d at 753. This case is the latest in that long line of decisions. At their base are two principles of contract interpretation. A clear and unambiguous contract provision must be given its plain meaning. *Burstein*, 809 A.2d at 206. However, contract provisions will not be enforced if to do so would be contrary

to a clearly expressed public policy. *Id.* Appellees do not claim that the language of the clause that the District Court deemed to bar their recovery is ambiguous; rather, they claim that to enforce that language would be contrary to the public policy expressed by the Pennsylvania legislature in the MVFRL.

### 1. *Public Policy of the MVFRL*

The Pennsylvania Supreme Court has cautioned against invalidating contract provisions because of vague public policy concerns articulated by the courts. *Eichelman*, 711 A.2d at 1008. It has noted that "[p]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." *Id.* "[O]nly dominant public policy" will "justify the invalidation of a contract as contrary to that policy," manifested by "long governmental practice or statutory enactments, or [by] violations of obvious ethical or moral standards." *Id.*

The predecessor legislation to the MVFLR, the No-Fault Act, embodied the public policy concern of "maximum feasible restoration" to accident victims. *Burstein*, 711 A.2d at 207. But, according to the Pennsylvania Supreme Court, the MVFLR parted emphasis from that principle. While "other public policies may underlie" the MVFLR, its "dominant and overarching public policy" is "legislative concern for the spiralling consumer cost of automobile insurance." *Id.* at 208 n.3. And the Court continues to assert that whether public policy concerns justify invalidating an exclusionary clause in an insurance contract must be determined on the facts of each case. *Colbert*, 813 A.2d at 752 (citing *Paylor*, 640 A.2d at 1240).

### 2. *Validity of Household Exclusion Clauses*

In *Paylor*, the Pennsylvania Supreme Court first addressed the validity of exclusion clauses under the MVFRL. *Paylor* involved a "family car exclusion," which "excludes a vehicle owned by or furnished or available for the regular use of the named insured or any family member from the definition of an underinsured motor vehicle." 640 A.2d at 1234. In other words, if an insured is injured by a "family car" which is underinsured, the policy will not

compensate the insured as it would had the insured been injured by a third person. Janet Paylor sued on behalf of her mother, Betty Dymond, who was killed in a single-vehicle accident involving the motor home operated by her husband, Fred Dymond. *Id.* at 1235. The motor home was insured by Foremost Insurance Company; the Dymonds' other three vehicles were insured by Hartford Insurance Company. *Id.* Paylor recovered the limits of the liability coverage under the Foremost policy, and then sought to recover underinsured motorist benefits under the Hartford policy. *Id.* Hartford denied coverage based on the family car exclusion, and the Supreme Court upheld the insurance company's denial. *Id.*

The Court first rejected Paylor's suggestion that any sort of contractual exclusion was *per se* invalid. *Id.* at 1241 n.6 (rejecting arguments that "the 'family car exclusion' is repugnant to the purposes and policy of the MVFRL"). Instead, it adopted an approach in which "[t]he enforceability [of these clauses] is dependent upon the factual circumstances presented in each case." *Id.* at 1240. The Court announced a "general rule that such provisions are invalid as against the policy of the MVFRL," but acknowledged a "limited exception" of validity "where a plaintiff is attempting to convert underinsured coverage into liability coverage."[4] *Id.* Because underinsured motorist

---

4. The Court examined four decisions, three of which had held the exclusion clause was enforceable. *See Paylor*, 640 A.2d at 1236-39 (discussing *Wolgemuth*, 535 A.2d at 1149, *Newkirk v. United Services Automobile Association*, 564 A.2d 1263, 1266 (Pa. Super. 1989), and *Kelly v. Nationwide Insurance Co.*, 606 A.2d 470, 474 (Pa. Super. 1992), in which the court held the exclusion clause valid, and *Marroquin v. Mutual Benefit Insurance Co.*, 591 A.2d 290, 296 (Pa. Super. 1991), in which the court held the exclusion clause invalid). The *Paylor* Court, in analyzing the *Marroquin* Court's opinion (which had looked to the law of Minnesota), noted that there is a "general rule under [Minnesota] state law . . . that a policy provision which excluded underinsured motorist benefits when the insured is injured while occupying a vehicle owned by the insured or a family member is invalid," subject to an exception "when the plaintiff attempts to convert his inexpensively purchased underinsurance into additional liability insurance." 640 A.2d at 1239 (citing *American Motorist Ins. Co. v. Sarvela*, 327 N.W.2d 77 (Minn.

coverage is less expensive than liability coverage, the Court did not want to encourage individuals to scrimp on the purchase of liability coverage and rely on their underinsured motorist coverage in the event of an accident. *Id.* ("[U]nderinsured motorist coverage is not designed to relieve an insured or his family from the failure to purchase adequate liability coverage.").

In subsequent cases, the so-called general rule has morphed into the minority rule, as most exclusion clauses have been deemed valid. *See Nationwide Mut. Ins. Co. v. Ridder*, 105 F. Supp. 2d 434, 436 (E.D. Pa. 2000) ("While the Pennsylvania Supreme Court has held that the enforceability of the exclusion is dependent upon the factual circumstances presented in each case, it has been upheld in nearly all of the cases in which it has been considered."); *see also Paylor*, 640 A.2d at 1234; *Windrim*, 641 A.2d at 1158; *Eichelman*, 711 A.2d at 1009; *Troebs v. Nationwide Ins. Co.*, No. CIV.A. 98-CV-3556, 1999 WL 79555 (E.D. Pa. Jan 20, 1999); *Burstein*, 809 A.2d at 208; *Colbert*, 813 A.2d at 753.

Here, in a variation of the situation in *Paylor*, Pamela Riley failed to purchase sufficient underinsured motorist benefits to cover her injuries and then sought additional recovery under her father's policy. The policy limits of the underinsured motorist coverage provided by her father's Nationwide policy—$100,000—were four times the limits of her own policy. Under Pennsylvania case law prior to *Colbert*, the exclusion in this case would be upheld as consistent with the public policy of the MVFRL, providing as it does an incentive for drivers to purchase adequate insurance coverage at the outset, thus later precluding payouts by insurers for lesser premiums that, while short-

1982)). Apparently this analysis the Pennsylvania Supreme Court found persuasive, as it later in the opinion adopted the same rule, but without citation to Minnesota law. *Id.* at 1240 ("Allowing the 'family car exclusion' to bar coverage in cases where a plaintiff is attempting to convert underinsured coverage into liability coverage is a limited exception to the general rule that such provisions are invalid as against the policy of the MVFRL.") (citing *Sherwood v. Bankers Standard Ins. Co.*, 621 A.2d 1015, 1017 (Pa. Super. 1993)).

term positive for an individual insured, in the long term result in higher premiums for other insureds.

3. *The Colbert Decision*

At the end of December 2002 the Pennsylvania Supreme Court decided the question requested of it by our Court: "whether the 'other household vehicle' exclusion contained in the Prudential policy is void as against the public policy of the MVFRL," as applied to Adam Colbert. *Colbert,* 813 A.2d at 748-49. In *Colbert,* the Pennsylvania Supreme Court reaffirmed its holding in *Paylor* that "the application of public policy concerns in determining the validity of an insurance exclusion is dependent upon the factual circumstances presented in each case." *Id.* at 752. The Court reviewed its recent decision in *Burstein* and noted that the reasoning in that case "focused upon whether the insurer was compelled to underwrite unknown risks that it has not been compensated to insure." *Id.* at 754. It concluded that the public policy concern of cost-containment expressed in the MVFRL validates those exclusions that "protect insurers against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure. Thus, operationally, insureds are prevented from receiving gratis coverage, and insurers are not compelled to subsidize unknown and uncompensated risks by increasing insurance rates comprehensively." *Id.* at 753 (quoting *Burstein,* 809 A.2d at 208 (emphasis omitted)).

Applying these principles to the circumstances of Colbert's case, the Pennsylvania Supreme Court found the following facts significant:

1. Colbert purchased underinsured motorist vehicle coverage from State Farm and received the maximum amount payable—the coverage for which he paid.

2. Colbert and his parents did not pay Prudential to insure his car and the household exclusion clause in his parents' Prudential insurance policy expressly excluded his vehicle from coverage under that policy.

3. The record did not suggest that Colbert or his parents ever disclosed Colbert's vehicle to Prudential.

The Court concluded that, given this set of facts, voiding the household exclusion clause would penalize Prudential by forcing it to pay for risks it never knew for premiums it never received. *Id.* at 754. Indeed, absent the exclusion, Adam Colbert would receive "gratis coverage or, more accurately, *double coverage.*" *Id.* In this context, it declined to permit such a result.

Yet the *Colbert* Court did not limit its conclusions to the particular factual circumstances before it. It noted as a general matter that voiding the household exclusion clause

> would empower insureds to collect UIM benefits *multiplied by the number of insurance policies on which they could qualify as an insured*, even though they only paid for UIM coverage on one policy. As a result, insureds would receive benefits far in excess of the amount of coverage for which they paid, as would be the case here were we to void the exclusion. The same would be true even if the insureds never disclose any of the other household vehicles to the insurers.

*Id.* (emphasis in original).

### 4. *Application of Colbert to This Case*

The facts in *Colbert* are strikingly similar to the facts before us. Adam Colbert's motor vehicle was insured by State Farm Insurance Company. Like Pamela Riley, at the time that Colbert was involved in an accident involving this vehicle, he resided with his parents. Also, Colbert's parents had insurance policies containing a household exclusion clause. And Colbert received the liability insurance policy limits from the individual who struck his vehicle and the underinsured motorist policy limits from State Farm, but was denied the benefits from his parents' policy with Prudential. Unlike Pamela Riley, however, Colbert's parents' vehicles were insured by a different insurance company—Prudential.

There is, therefore, one meaningful distinction between this case and *Colbert*. In contrast to *Colbert*, in which the Supreme Court noted that "there is nothing to suggest that Adam or his parents ever disclosed Adam's vehicle to [the insurer]," here the insurer, Nationwide, knew of Pamela's

car because it insured Pamela and her father. Indeed, while the record is not entirely clear on this point, it would appear that the two used the same insurance agent. This factual distinction means that, unlike *Colbert*, Nationwide was not being asked to underwrite an unknown risk.

The fact that the two vehicles were insured by the same insurance company does not, however, turn the tide. Even though the *Colbert* Court noted as a relevant fact that the insurer did not know of Adam's vehicle, that fact does not appear critical to its analysis.[5] Upholding the household exclusion clause in this case will further the policy goals of the MVFRL of containing insurance costs, and therefore does not counsel differently than *Colbert*. In exchange for a reduction in insurance premiums, Arthur Riley chose to exclude the other cars in his household from his underinsured motorist policy. Now that his daughter Pamela has already recovered to the limit of her own underinsured motorist policy, she seeks benefits for which she has not paid. She has presented no evidence, however, that Nationwide factored in the risk of her having an accident with an uninsured motorist when it calculated Arthur's premium. Indeed, we may presume that it did not, as Pamela's insurance policy was issued months after Arthur's policy. Voiding the exclusion clause would therefore allow Pamela added underinsured policy recoveries, and force Nationwide to pay for items not factored into its risk calculations.

Further, the *Colbert* court also discussed its broader concerns about negating household exclusion clauses in general and those concerns are implicated here as well. Voiding such a clause "would empower insureds to collect UIM benefits *multiplied by the number of insurance policies on which they could qualify,*" and Pamela Riley "would receive benefits far in excess of the amount of coverage for which [she] paid." *Colbert*, 813 A.2d at 754 (emphasis in

5. Indeed, we do not think that, had Prudential been notified of the existence of Colbert's car (so that it was not, in fact, being asked to underwrite an unknown risk), it would have changed the outcome of *Colbert*, given the presence of the household exclusion clause and the tenor of the Pennsylvania Supreme Court's opinion.

text). Nationwide "would be forced to increase the cost of insurance, which is precisely what the public policy behind the MVFRL strives to prevent." *Id.* at 754-55.

## III. Conclusion

Under the test set out by the Pennsylvania Supreme Court, the exclusion provision we review would require an insurer to underwrite risks that the insured did not pay to insure. Because here Arthur Riley did not pay to insure his daughter's vehicle under his underinsured motorist policy, the exclusion is valid and she cannot recover under that policy. We therefore affirm the District Court's order granting summary judgment to Nationwide.

A True Copy:
Teste:

*Clerk of the United States Court of Appeals*
*for the Third Circuit*