**NATIONWIDE MUTUAL INSURANCE COMPANY, Plaintiff,**

v.

**Heidi SCHMIDT, Defendant.**

**Civil Action No. 02–978.**

United States District Court,
W.D. Pennsylvania.

Feb. 27, 2004.

Christopher T. Lee, L. John Argento, Dickie, McCamey & Chilcote, Pittsburgh, PA, for Plaintiff.

John M. Bonanti, Bernard, Stuczynski & Bonanti, Erie, PA, for Defendant.

## MEMORANDUM ORDER

CONTI, District Judge.

Pending before the court are the parties' cross-motions for summary judgment concerning whether plaintiff Nationwide Mutual Insurance Co. ("plaintiff" or "Nationwide") is entitled to a declaratory judgment that it is not required to satisfy the claim of defendant Heidi Schmidt ("defendant") for underinsured motorist (UIM) benefits under an insurance policy issued by Nationwide to defendant and her husband.[1] Plaintiff argues that defendant is either not covered under the policy or is excluded under the policy. Defendant contends that (1) the policy language is ambiguous and should be read as permitting coverage; and/or (2) the family exclusion clause of plaintiff's policy is void as violative of public policy. The material facts are not in dispute and are set forth in a joint stipulation of undisputed and disputed facts filed by the parties. (*See* Doc. No. 19). This court finds that the insurance policy at issue is not ambiguous and

that defendant's claim is excluded under the policy's household exclusion clauses.[2] Therefore, the court will grant plaintiff's motion for summary judgment and deny defendant's motion for summary judgment.

### *Background*

Defendant and her husband Ralph W. Schmidt, Jr. were named insureds under a Century II Auto Policy No. 5437B233793 ("Nationwide policy") issued by plaintiff on June 5, 2001. That policy provided auto insurance coverage for three vehicles: a 1997 Dodge Dakota, a 1968 Chevrolet Chevelle, and a 1991 Plymouth Sundance. The policy further provided, *inter alia*, UIM coverage with a $300,000 liability limit for each occurrence. The policy defines an "underinsured motor vehicle" as

[A] **motor vehicle** for which bodily injury liability coverage, bonds or insurance are in effect. However, their total amount is insufficient to pay the damages an **insured** is entitled to recover. **We** will pay damages that exceed such total amount.

Nationwide policy, Endorsement 2358 (emphasis in original). The policy then states that, with regard to UIM coverage, it will provide coverage for "you and a relative":

**We** will pay compensatory damages, including derivative claims, which are due by law to **you** or a **relative** from the owner or driver of an **underinsured motor vehicle** because of **bodily injury** suffered by **you** or a **relative**. Damages must result from an accident arising out of the:

1. ownership;
2. maintenance; or

---

1. Plaintiff initially filed a motion for summary judgment at Doc No. 15. Plaintiff subsequently amended its motion and refiled it at Doc. No. 22.

2. In finding that coverage is excluded under the household exclusion clauses, the court does not address the issue of whether coverage is also excluded under the family car exclusion.

3. use;

of the **underinsured motor vehicle.**
Nationwide policy, Endorsement No. 2358 (emphasis in original). The term "you" refers to "the policyholder as defined, and include[s] the policyholder's spouse if living in the same household." Nationwide policy, p. 2.[3] The term "relative" means "one who regularly lives in your household and who is related to you by blood, marriage or adoption (including a ward or foster child). A relative may live temporarily outside your household." Nationwide policy, Endorsement 2264A.

In addition, Ralph Schmidt also owned, in his name alone, a 1996 Harley–Davidson motorcycle which was not insured under the Nationwide policy at the time of the relevant occurrence. At one point, the motorcycle was insured by Nationwide; however, he terminated coverage with plaintiff on April 28, 1998, prior to his marriage to defendant. On that same date he obtained coverage for the motorcycle from Universal Underwriters Insurance ("Universal"). The Universal policy had bodily injury coverage limits in the amount of $50,000. Defendant herself never owned a motorcycle or possessed a valid motorcycle operators license, and she contends that she only occasionally rode as a passenger on her husband's motorcycle. One of defendant's occasional trips on her husband's Harley–Davidson, however, gave rise to the instant action.

On June 17, 2001, defendant was riding as a passenger on the back of her husband's motorcycle. The motorcycle became involved in an accident with another vehicle, causing defendant to suffer numerous injuries. Specifically, defendant fractured her pelvis, dislocated her left hip, lacerated her left knee, suffered an open grade fracture to her left tibia and fibula, injured her right knee, and sustained an extra peritoneal bladder rupture. Defendant claimed that her husband was at least partially responsible for the accident, and she thereafter made a claim to Universal for the full $50,000 in policy limits of liability coverage for the motorcycle. Universal satisfied the claim, and, after Nationwide waived its subrogation rights, defendant made a claim to Nationwide seeking $300,000 in underinsured motorist benefits. Nationwide denied defendant's claim and thereafter filed a declaratory judgment action with this court.

Plaintiff relies upon the "household exclusion" clauses in the policy as a basis for denying defendant's claim.[4] Plaintiff asserts that two clauses contained in the Nationwide policy, Endorsement No. 2358, are household exclusion clauses. Those clauses are as follows:

**COVERAGE EXCLUSIONS**

This coverage does not apply to:

\*    \*    \*    \*    \*    \*

5. **Bodily injury** suffered while **occupying** or struck by a motor vehicle owned by **you** or a **relative,** but not insured for auto liability coverage under this or any other policy.

6. **Bodily injury** suffered while **occupying** a **motor vehicle** owned by **you** or a **relative** but not insured for Underinsured Motorists coverage under this pol-

---

3. The declaration page of the policy identifies the policyholder as "Ralph W. Jr. and Heidi Schmidt," husband and wife.

4. Plaintiff also relies on the "family car" exclusion which plaintiff argues supports a denial of defendant's claims. The provision in the policy which contains that exclusion provides: "**We** will not consider as an **underin-**

sured motor vehicle ... (f) any **motor vehicle** furnished for the regular use of **you** or a **relative.**" Nationwide policy, Endorsement No. 2358 (emphasis in original). As noted previously the court in light of the findings pertaining to the applicability of the "household exclusion" clause, will not discuss the family car exclusion.

icy; nor to **bodily injury** from being hit by any such **motor vehicle.**

(Emphasis in original).

### Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R.CIV.P. 56(c). A motion for summary judgment will not be defeated by the mere existence of some disputed facts, but will be defeated when there is a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at 249, 106 S.Ct. 2505.

### Discussion

**A. The household exclusion clauses contained in the Nationwide policy are not ambiguous.**

■ Defendant's first argument is that paragraphs 5 and 6 of Endorsement No. 2358, which contain the household exclusionary clauses at issue are ambiguous. That argument has no merit. First, defendant notes that "the endorsement 2358 does have additional provisions which are different from Underinsured Motorist Coverage provisions in the bulk of the policy itself." Def.'s Reply Br. (Doc. No. 21).

This is not an unusual situation; in fact, endorsements by their very nature are designed to trump general policy provisions, and where a conflict exists between provisions in the main policy and the endorsement, the endorsement prevails. *St. Paul Fire & Marine Insurance Co. v. U.S. Fire Insurance Co.,* 655 F.2d 521, 524 (3d Cir.1981). Second, the court fails to see how "the juxtaposition of paragraphs 5 and 6 of the same endorsement 2358 creates a patent contradiction in language." Def.'s Reply Br. (Doc. No. 21). The two paragraphs contain *different* exclusions and should be examined independently to carry the agreement as a whole into effect. *See Moran v. Bair,* 304 Pa. 417, 156 A. 81 (1931) (stating that two contractual provisions should be so interpreted that each will be given an independent meaning). Paragraph 5 excludes from coverage those who are injured by a motor vehicle owned by "you or a relative" but are not insured for *auto liability coverage* under the Nationwide policy. Paragraph 6 is similar, but it governs situations where the motor vehicle involved in causing bodily injury was not insured for *UIM coverage* under the Nationwide policy. The court determines that the provisions, examined independently and collectively, are unambiguous and not reasonably susceptible to more than one interpretation.

**B. The household exclusion clauses contained in the policy do not violate public policy.**

Pursuant to the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 PA. CONS.STAT. ANN. §§ 1701 *et seq.,* insurers are required to offer UIM coverage in every automobile insurance policy. 75 PA. CONS.STAT. ANN. § 1731(a).[5] Section 1731 of the MVFRL

---

**5.** What is mandatory under the MVFRL is that insurance companies offer UIM coverage. Insurance consumers have the option whether to purchase the coverage or not. *Id.* § 1731(a).

governs the offering and purchase of UIM coverage. That section states:

> § 1731. Availability, scope and amount of coverage
>
> (a) Mandatory offering.—No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.
>
>     \*     \*     \*     \*     \*     \*
>
> (c) Underinsured motorist coverage.— Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles....

*Id.*[6]

The purpose of UIM coverage is "to protect the insured (and his additional insureds) from the risk that a negligent driver of another vehicle will cause injury to the insured (or his additional insureds) and will have inadequate coverage to compensate for the injuries caused by his negligence." *Wolgemuth v. Harleysville Mutual Insurance Co.,* 370 Pa.Super. 51, 535 A.2d 1145, 1149 (1988). The statutory scheme of the MVFRL requires at least two applicable policies of motor vehicle insurance to exist for UIM coverage to apply. *Id.* at 1149. As stated by the Pennsylvania Superior Court in *Wolgemuth:*

> An underinsured motor vehicle, must, by definition, be an insured vehicle. Thus, the statute contemplates one policy applicable to the vehicle which is at fault in causing the injury to the claimant and which is the source of liability coverage (which is ultimately insufficient to fully compensate the victim), and a second policy, under which the injured claimant is either an insured or a covered person. It is the second policy which the statute contemplates as the source of underinsured motorist coverage, where the liability coverage provided by the first policy of insurance is insufficient to fully compensate the claimant for his injuries.

*Id.*

■ "Generally, courts must give plain meaning to a clear and unambiguous contract provision unless to do so would be contrary to a clearly expressed public policy." *Prudential Property and Cas. Ins. Co. v. Colbert,* 572 Pa. 82, 813 A.2d 747, 750 (2002). Defendant argues that even if the court finds, as it has, that the provisions of the policy at issue are unambiguous, those provisions violate public policy. Policy provisions that operate to deny a claimant UIM benefits, however, are not *per se* violative of public policy. *Wolgemuth* 535 A.2d at 1148. *See also Paylor v. The Hartford Ins. Co.,* 536 Pa. 583, 640 A.2d 1234, 1241 n. 6 (1994). Whether an exclusion barring UIM coverage violates the public policy of the MVFRL, "is dependent upon the factual circumstances presented in each case." *Paylor,* 640 A.2d at 1240. The situation where "a plaintiff is attempting to convert underinsured coverage into liability coverage is a limited exception to the general rule that such provisions are invalid as against the policy of the MVFRL." *Id.*[7] Pennsylvania courts

---

**6.** Insurance consumers rejecting UIM are statutorily required to sign a waiver that rejects UIM protection. *Id.*

**7.** *See Nationwide Mutual Ins. Co. v. Riley,* 352 F.3d 804, 808–09 (3d Cir.2003) ("In subsequent cases, the so-called general rule has morphed into the minority rule, as most ex-

have recognized that the "dominant and overarching public policy" of the MVFRL was the "legislative concern for the increasing cost of insurance." *Colbert,* 813 A.2d at 753; *Burstein v. Prudential Property and Casualty Insurance Co.,* 570 Pa. 177, 809 A.2d 204, 207 (2002); *Paylor,* 640 A.2d at 1235. The "conservative public policy of the MVFRL," however, does not automatically validate coverage exclusions. *Colbert,* 813 A.2d at 753. Instead, "it functions to protect insurers against forced underwriting of unknown risks that insureds have neither disclosed nor paid to insure." *Burstein,* 809 A.2d at 208. Insureds, thus, "are prevented from receiving gratis coverage, and insurers are not compelled to subsidize unknown and uncompensated risks by increasing insurance rates comprehensively." *Id.*

The Pennsylvania Supreme Court and the United States Court of Appeals for the Third Circuit each recently examined the applicability of household exclusion clauses to UIM coverage. In *Prudential Property and Cas. Ins. Co. v. Colbert,* 572 Pa. 82, 813 A.2d 747 (2002), the Pennsylvania Supreme Court responded to a question certified to it by the United States Court of Appeals for the Third Circuit. Adam Colbert was injured after he was involved in an automobile accident with another driver. At the time of his accident, Colbert had an insurance policy with State Farm Insurance Company ("State Farm") that contained both uninsured ("UM") and UIM coverage. When the accident occurred, Colbert resided with his parents, who owned three automobiles that had UM and UIM coverage under a policy issued by Prudential Property and Casualty Insurance Company ("Prudential"). *Id.* at

749. The Prudential policy expressly excluded Adam's vehicle from coverage. Colbert subsequently settled his claim against the driver that caused the accident; he then recovered the maximum amount of UIM coverage under his own State Farm policy. *Id.* Colbert then made a claim for additional UIM benefits under the Prudential policy. *Id.* Prudential declined to satisfy the claim, relying in part upon a household exclusion clause in the policy. *Id.* That provision stated:

**OTHER HOUSEHOLD VEHICLES**

We will not pay for bodily injury to anyone occupying or struck by a motor vehicle owned or leased by you or a household resident which is not covered under this policy, or if the liability coverage of that vehicle is used to pay any portion of an insured's bodily injury liability claim.

*Id.* The United States District Court for the Western District of Pennsylvania entered summary judgment in favor of the insurer. On appeal, the United States Court of Appeals for the Third Circuit certified questions to the Pennsylvania Supreme Court, including the question whether the household exclusion clause violated public policy. *Id.* at 751.

The Pennsylvania Supreme Court determined that the household exclusion clause at issue in *Colbert* did not violate the public policy of the MVFRL. *Id.* at 754. The court relied upon the fact that Prudential was being asked to underwrite unknown risks that it was not compensated to insure. Colbert had UIM coverage on his vehicle under his State Farm policy, and he received the maximum amount of UIM coverage pursuant to that policy. Pruden-

clusion clauses have been deemed valid."). *See also Nationwide Mut. Ins. Co. v. Ridder,* 105 F.Supp.2d 434, 436 (E.D.Pa.2000) ("While the Pennsylvania Supreme Court has held that the enforceability of the exclusion is

dependent upon the factual circumstances presented in each case, it has been upheld in nearly all of the cases in which it has been considered.").

tial was unaware that he owned the vehicle insured under the State Farm policy, and his attempt to recover UIM benefits under his parents' Prudential policy would result in "gratis coverage on a vehicle that the insurer never knew existed." *Id.* Voiding the exclusion would actually work against public policy because it would "empower insureds to collect UIM benefits *multiplied by the number of insurance policies on which they could qualify as an insured,* even though they only paid for UIM coverage on one policy." *Id.* (emphasis in original). Such a result would permit insureds to receive benefits "far in excess of the amount of coverage for which they paid." *Id.*

The Pennsylvania Supreme Court in *Colbert* did not address the issue whether knowledge by the insurance company of the existence of the additional vehicle would change the public policy analysis. That issue, however, was addressed recently by the United States Court of Appeals for the Third Circuit in *Nationwide Mutual Ins. Co. v. Riley,* 352 F.3d 804 (3d Cir.2003). In *Riley,* an insurance agent for Nationwide issued separate insurance policies to Arthur Riley and his daughter, Pamela. Arthur's policy provided UIM coverage in the amount of $100,000 per person and $300,000 per accident. Pamela's policy, which only covered her vehicle, provided UIM coverage in the amount of $25,000 per person and $50,000 per accident. *Id.* at 805. Pamela was involved in an accident with a third-party vehicle, resulting in her injuries. She recovered $15,000 in liability insurance from the third-party insurer, as well as $25,000 in UIM under her Nationwide policy. *Id.* She then claimed UIM benefits under her father's Nationwide policy; that claim, however, was rejected by Nationwide pursuant to a household exclusion clause within the policy, which provided:

This coverage does not apply to:

[b]odily injury suffered while occupying a motor vehicle owned by you or a relative but *not insured for Underinsured Motorist coverage* under this policy; nor to bodily injury from being hit by any such motor vehicle.

*Id.* (emphasis in original).

The *Riley* court noted that the facts were virtually identical in its case to those in *Colbert* except for one important distinction: whereas Colbert and his parents' vehicles were insured by different insurers, Pamela Riley and her father's vehicles were insured by the same insurer. *Id.* at 810. This distinction led Riley to argue that Nationwide was not being asked to underwrite an *unknown risk,* as in *Colbert,* because in her case Nationwide was aware of the additional vehicle. In fact, Nationwide was the insurer for both vehicles. *Id.* The court rejected this argument, stating that it was immaterial whether "the two vehicles were insured by the same insurance company" or whether the insurer was aware of the additional vehicle. *Id.* According to the court, the public policy behind the MVFRL—to limit the increasing cost of insurance—would not be well served if insurers were required "to pay for items not factored into its risk calculations." *Id.* The court noted that the broader concern relating to negating the household exclusion clause discussed in *Colbert*—empowering insureds to collect UIM benefits multiplied by the number of insurance policies on which they could qualify—was implicated in that case as well, and that the end result would be increased insurance costs passed on to consumers. *Id.* at 810–11. The court concluded that the exclusion was valid because it was proper for the insurer to exclude risks that the insured did not pay to insure. *Id.* at 810.

Defendant argues in her brief that the facts of her case deserve a different

conclusion from *Colbert* for three reasons: (1) that Nationwide had reason to know of the existence of her husband's motorcycle; (2) that she had no ability to control or compel the coverages with which her husband chose to insure the motorcycle; and (3) that she paid premiums for the coverage she is attempting to recover from for her injuries.[8] All three arguments fail under the established framework of the law surrounding household exclusion clauses, as detailed above.

Defendant's first argument fails under the rationale of *Riley*. The facts in this case are strikingly similar to those in *Riley*. In *Riley*, Nationwide had insured the vehicle owned by Pamela Riley and, thus, was "aware" of the existence of that automobile. The same insurance agent sold Nationwide policies to Pamela Riley and her father covering their respective vehicles. In *Riley* the court determined that the insurer's knowledge of the existence of the additional vehicle was immaterial to the issue of whether the household exclusion clause was void as against public policy. *Riley*, 352 F.3d at 810–11. Here, defendant was injured in an accident on her husband's motorcycle. She received the limits of liability coverage on her husband's motorcycle insurance policy, and she then made a claim to plaintiff seeking UIM coverage under the policy issued by it, despite the fact that plaintiff did not provide insurance coverage for the motorcycle. Similar to *Riley*, whether or not Nationwide was "aware" of Ralph Schmidt's Harley Davidson motorcycle because it previously insured the motorcycle from the date of its purchase until April 28, 1998 is immaterial. Furthermore, defendant was refused coverage under policy exclusions nearly identical to the policy provision reviewed in *Riley*. In this case, whether or not Nationwide was "aware" of

Ralph Schmidt's motorcycle has no bearing on defendant's argument that the household exclusion clauses are void as against public policy.

Second, the fact that defendant had no ability to control or compel the insurance coverage which her husband chose to insure the motorcycle is immaterial. As noted above, the MVFRL contemplates at least two applicable motor vehicle insurance policies to exist for UIM coverage to apply: one for the vehicle at fault, and another policy for the injured claimant. The second policy is the source of the UIM coverage, "where liability coverage provided by the first policy of insurance is insufficient to fully compensate the claimant for his injuries." *See Wolgemuth*, 535 A.2d at 1149. Thus, in this case, the insurance coverage chosen by defendant's husband is immaterial; what matters is the coverage that Nationwide provided to defendant, and that policy contains valid household exclusion clauses.

Finally, defendant's argument that she paid premiums for the coverage she is attempting to recover from for her injuries does not compel the court to hold that the household exclusion clauses at issue violate public policy. The household exclusion clauses exclude coverage for an otherwise insured individual, when that individual "occupies a *separately owned vehicle* that is *not insured* under the *subject policy*." *See Colbert*, 813 A.2d at 752 (emphasis added). Nationwide did not factor into the costs of defendant's premium that it would be forced to pay UIM benefits on a motorcycle owned by defendant's husband but not subject to the Nationwide policy. Accepting defendant's argument would permit a family with multiple motor vehicles to obtain UIM coverage for each family member through a single insurance policy

---

**8.** Neither party cited *Riley* as that opinion was filed in December 2003, past the date that summary judgment briefs and responses were due in this case.

that covers one or more vehicles in the household, while failing to cover additional vehicles in the household. *See Eichelman v. Nationwide Insurance Co.*, 551 Pa. 558, 711 A.2d 1006 (1998).

Household exclusion clauses are designed to protect against attempts to convert UIM coverage into liability coverage. Although defendant paid premiums to Nationwide, Nationwide did not factor the risk of defendant being injured on her husband's motorcycle into the costs of her insurance premium. As noted in *Colbert*, the main question in the public policy analysis is whether the insurer would be compelled to underwrite unknown risks that it has not been compensated to insure. *Id.* at 754. In this case, like in *Colbert*, the household exclusion clauses are not void as against public policy because Nationwide was not compensated to insure against the risk that defendant would injure herself while riding on her husband's motorcycle. The record is devoid of evidence that Nationwide factored in the risk of defendant having such an accident when it calculated her insurance premium. *Riley*, 352 F.3d at 810. Requiring plaintiff to bear such risks without being compensated would lead to higher insurance premiums across the board—a consequence that the MVFRL was designed to avoid. *Id.* at 811.

### *Conclusion*

AND NOW, this _____ day of February 2004, upon consideration of the cross-motions for summary judgment by plaintiff Nationwide Mutual Insurance Company (Doc. No. 22) and by defendant Heidi Schmidt (Doc. No. 20), **IT IS ORDERED** that plaintiffs's motion is **GRANTED** and defendant's motion is **DENIED.**