972 A.2d 507

**ERIE INSURANCE EXCHANGE, Appellee**

**v.**

**Linda J. BAKER, Administratrix of the Estate of Eugene Baker, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 10, 2008.

Decided June 22, 2009.

356

Scott B. Cooper, Schmidt, Ronca & Kramer, P.C., Harrisburg, Kenneth J. Nolan, Cynthia M. Danel, Edgar Snyder & Associates, L.L.C., Pittsburgh, for Estate of Eugene Baker, appellant.

Richard E. Freeburn, Freeburn & Hamilton, Harrisburg, for Pennsylvania State Troopers Ass'n, appellant amicus curiae.

Michael J. Foley, John Thomas McLane, Jr., Thomas J. Foley, Foley, McLane, Foley, McDonald & McGregor, P.C., Scranton; James Richard Ronca, Anapol Schwartz, Philadelphia; Lee C. Swartz, Tucker Arensberg, P.C., Harrisburg, for Pennsylvania Ass'n for Justice, appellant amicus curiae.

Timothy Allen Shollenberger, Adam Todd Wolfe, Shollenberger & Januzzi, L.L.P., Enola, for Alliance of Bikers Aimed Toward Educ. of Pennsylvania, appellant amicus curiae.

Mark William Tanner, Feldman, Shepherd, Wohlgelernter, Tanner, Weinstock & Dodig, Philadelphia, for AFSCME Counsil 13 and SEIU Local 668, appellant amici curiae.

Craig R.F. Murphey, MacDonald, Illig, Jones & Britton, L.L.P., Erie; Arthur J. Leonard, Pittsburgh, for Erie Insurance Exchange, appellee.

James C. Haggerty, Swartz Campbell, L.L.C., Philadelphia, for PA Defense Inst. and the Ins. Federation of PA, appellee amici curiae.

Teresa Ficken Sachs, Post & Schell, P.C., Philadelphia, for Philadelphia Ass'n of Defense Counsel, appellee amicus curiae.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY and GREENSPAN, JJ.

## OPINION ANNOUNCING THE JUDGMENT
## OF THE COURT

Justice GREENSPAN.

We decide whether the so-called "household exclusion" in a motor vehicle insurance policy is valid and enforceable to preclude the payment of underinsured motorist benefits under the circumstances of this case. We hold the exclusion is valid, and accordingly affirm the order of the Superior Court.

Appellee Erie Insurance Exchange (Erie) filed this action seeking a declaration of rights and obligations regarding a motor vehicle insurance policy it issued to appellant Eugene Baker, covering three vehicles he owned.[1] The Erie policy included $100,000/$300,000 in underinsured motorist (UIM) coverage on each of these vehicles. Baker did not sign a waiver of his rights to "stack" the coverages of these three vehicles.[2]

In June 1999, Baker was in an accident while operating his motorcycle. The motorcycle was not insured by Erie, but rather by Universal Underwriters Insurance Company (Universal). The Universal motorcycle policy included $15,000 in UIM coverage. Because the tortfeasor's insurance was insufficient to cover Baker's injuries, Baker sought UIM coverage under his own policies with Erie and Universal.

Universal paid its UIM limits to Baker. Baker then sought additional UIM benefits from the Erie policy. Erie denied coverage, relying on the following exclusion language in its policy:

1. Eugene Baker died on March 3, 2008, apparently of causes unrelated to this matter. A Notice of Death was filed with the Prothonotary of this Court and his estate was substituted as the appellant by order dated August 14, 2008. For ease of discussion, we will continue to refer to the appellant as Baker.

2. "Stacking" refers to combining the coverage on individual vehicles to increase the limits available to an insured. Generally, the premium for insurance policies with "stacked" coverage is higher, but insureds may reject stacking in return for a reduced premium payment, as long as the insurer obtains a written waiver from the insured in accordance with the provisions of the Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S. § 1738(d).

This insurance does not apply to ... damages sustained by anyone we protect while occupying or being struck by a motor vehicle owned by you or a relative, but not insured for Uninsured or Underinsured Motorists Coverage under this policy.[3]

In the instant declaratory judgment action, Erie filed a motion for judgment on the pleadings. Erie argued the plain language of its household exclusion denies coverage to Baker because, at the time of the accident, he was driving a vehicle owned by him but not insured under the Erie policy, i.e., his Universal-insured motorcycle. The trial court agreed with Erie and entered judgment in its favor. The Superior Court affirmed in an unpublished memorandum opinion.

This Court granted Baker's petition for allowance of appeal, limited to the following issue:

Whether Section 1738(a) of the [Motor Vehicle Financial Responsibility Law] precludes application of the so-called "household exclusion" to prevent inter-policy stacking of UIM benefits when there has been no valid stacking waiver by the insured.

In his argument to this Court, Baker concedes that the unambiguous terms of Erie's household exclusion apply to preclude UIM coverage under the circumstances of this case. But Baker claims that Erie's household exclusion violates the Motor Vehicle Financial Responsibility Law (MVFRL), specifically the provisions regarding stacking contained in 75 Pa. C.S. § 1738. Section 1738(a) provides:

**§ 1738. Stacking of uninsured and underinsured benefits and option to waive**

(a) **Limit for each vehicle.**—When more than one vehicle is insured under one or more policies providing uninsured or

---

**3.** This type of exclusion is often referred to as a "household exclusion," because it refers to vehicles owned by the insured or a relative, someone in the same household as the insured. The exclusion is similar to the "regularly used, non-owned" exclusion, which precludes coverage of vehicles used by the insured, but not insured under the subject policy. The "regularly used, non-owned" exclusion has been upheld by this Court. *See, e.g., Burstein v. Prudential Prop. & Cas. Ins. Co.*, 570 Pa. 177, 809 A.2d 204 (2002).

underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. *The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.*

75 Pa.C.S. § 1738(a) (emphasis added).

Baker asserts he is entitled to the "sum of limits for each motor vehicle as to which [he] is an insured" under Section 1738(a) because he did not execute the stacking rejection form authorized by that statute.[4] He argues further that, because the plain language of Erie's exclusion prevents the payment of the "sum of limits" in the absence of a valid stacking waiver,

4. Section 1738 further provides:

(b) **Waiver.**—Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.
(c) **More than one vehicle.**—Each named insured purchasing uninsured or under insured motorist coverage for more than one vehicle under a policy shall be provided the opportunity to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.
For drivers who wish to waive the right to stack coverages in return for a lower premium, Section 1738 of the MVFRL mandates the specific language to be used by insurers for stacking rejection forms. *See* 75 Pa.C.S. § 1738(d).
This Court has recently confirmed that inter-policy stacking may be waived in accordance with the MVFRL. *Craley v. State Farm Fire & Cas. Co.*, 586 Pa. 484, 895 A.2d 530 (2006). In *Craley,* the insured was killed by an uninsured driver while driving her State Farm-insured vehicle. The insured's estate received the limits of her uninsured motorist coverage from State Farm, then sought additional coverage under her husband's vehicle, also insured by State Farm but on a separate policy. 895 A.2d at 533. State Farm denied coverage based on an express written waiver of inter-policy stacking signed by the insured pursuant to 75 Pa.C.S. § 1738(d). *Id.* This Court held State Farm did not owe coverage because inter-policy stacking may be waived by an insured, and Craley's waiver was explicit and effective to preclude coverage. 895 A.2d at 542. This Court's Majority Opinion expressly did not address the enforceability of the household exclusion. 895 A.2d at 532. Mr. Justice Eakin wrote separately to add that he would have held State Farm's household exclusion also precluded coverage to Craley. 895 A.2d at 544 (Eakin, J., concurring).

Erie's exclusion is invalid. Essentially, Baker claims, the exclusion acts as a "disguised waiver" of stacking that does not comply with the explicit waiver requirements of Section 1738(d). Baker contends that Erie is improperly abrogating a statutory requirement by inserting an exclusion into its policy. Moreover, since Baker affirmatively chose not to waive inter-policy stacking and therefore paid a higher premium for that choice, Baker claims that Erie's application of the exclusion in this case has the effect of denying him coverage he paid for in accordance with the MVFRL. Baker further argues that the exclusion is "buried" in the Erie policy.[5]

Erie counters that the policy exclusion involved here is valid and enforceable, and has been upheld by this Court time and time again. *See, e.g., Prudential Prop. & Cas. Ins. Co. v. Colbert*, 572 Pa. 82, 813 A.2d 747 (2002); *Eichelman v. Nationwide Ins. Co.*, 551 Pa. 558, 711 A.2d 1006 (1998). *See also Paylor v. Hartford Ins. Co.*, 536 Pa. 583, 640 A.2d 1234 (1994) (upholding similar "family car exclusion"). There is no dispute that the exclusion's unambiguous language precludes coverage in this case, where the insured was injured while riding his non-Erie-insured motorcycle. If its exclusion is invalidated, Erie will be paying on a risk it did not knowingly insure, or collect a premium to underwrite: in this case, the substantially higher risk associated with motorcycles. Furthermore, Erie argues, Section 1738's stacking provisions do not apply here. Those provisions refer to stacking UIM benefits in policies that provide UIM coverage. There is no UIM coverage under the circumstances of this case because the household exclusion applies to preclude it in the first instance. Ultimately, this case is not about stacking. It is about an applicable, unambiguous exclusion designed to preclude unpaid coverage of unknown risks.[6]

---

**5.** Amici who filed briefs in support of Baker's position are The Pennsylvania State Troopers Association, Alliance of Bikers Aimed Toward Education of Pennsylvania (ABATE), Council 13 of AFSCME and SEIU Local 668, and Pennsylvania Association for Justice (PAJ) (formerly the Pennsylvania Trial Lawyers Association).

**6.** Amici who filed briefs in support of Erie's position are The Philadelphia Association of Defense Counsel (PADC), The Pennsylvania Defense

 Baker's novel argument—that the household exclusion is a "disguised waiver" which skirts the express waiver requirements of the MVFRL—is initially interesting.[7] The MVFRL clearly provides the exclusive procedure for stacking waiver in Section 1738, and in the absence of such waiver, the insured is entitled to stack coverages. Ultimately, however, Baker's argument fails. After careful review, we conclude that application of the household exclusion in this case does not involve "stacking" at all. We hold instead that the Erie policy exclusion is a valid and unambiguous preclusion of coverage of unknown risks, and it was properly applied to the circumstances of this case.

 We begin our analysis by noting that "the interpretation of a contract of insurance is a matter of law for the courts to decide. In interpreting an insurance contract, we must ascertain the intent of the parties as manifested by the language of the written agreement. When the policy language is clear and unambiguous, we will give effect to the language of the contract." *Paylor*, 640 A.2d at 1235. We further note that an insured's failure to read carefully the clear and unambiguous terms of his insurance policy has never furnished grounds to invalidate those terms or otherwise nullify them. *See, e.g., Standard Venetian Blind Co. v. American Empire Ins. Co.*, 503 Pa. 300, 469 A.2d 563, 566 (1983) (holding failure to read an insurance contract is an unavailing excuse and cannot justify avoidance of its terms). There is no dispute in this case that the terms of the exclusion are clear, unambiguous and directly applicable. Baker's claim that the exclusion was somehow "buried" in his insurance policy is not persuasive.

Institute and The Insurance Federation of Pennsylvania. The Commonwealth's Insurance Department was invited to file an amicus brief in the order granting allowance of appeal, but did not do so.

7. Because this Court has upheld the household exclusion in the face of public policy challenges, the argument Baker makes that the exclusion actually violates a statute is technically a new one. But the argument is unavailing because an enactment by the legislature-such as the MVFRL-is indeed the embodiment of public policy. We are not persuaded that our earlier decisions on this issue are distinguishable in any material way.

Next, we consider the relevant statutes. Section 1738(a) of the MVFRL mandates stacking of uninsured and underinsured benefits limits when multiple vehicles are insured under policies on which the insured is covered for a given accident. Section 1738(b) allows an insured to waive the stacking in return for a lower insurance premium. The rest of Section 1738 describes the waiver procedure. Baker did not waive stacking of UM and UIM coverages on his Erie policy. Thus, if he had been in an accident driving one of the Erie-insured vehicles and the tortfeasor had insufficient coverage, Baker would have been permitted to stack the UIM limits on all three vehicles ($100,000 each) and have access to benefits of $300,000.[8]

Baker, however, was injured in a collision while driving a fourth vehicle from his household, his Universal-insured motorcycle. The third-party tortfeasor's insurance was insufficient to cover his damages. Baker therefore sought UIM benefits from the Universal policy on his motorcycle, and received the policy limits of $15,000, which still did not adequately compensate him.[9] Next in priority was the other

8. Amici PADC points out that Baker also would have been entitled to stack coverages while occupying a vehicle *outside of his household,* or while occupying a bus, taxi, or like form of livery, or as a pedestrian (*i.e.,* when he was not occupying a vehicle described by the household exclusion). PADC Amicus Brief at 2, 13.

9. We are not unaware of, or unsympathetic to, the difficulty encountered by motorcyclists who seek adequate motor vehicle insurance coverage. Amicus ABATE asserts that Baker should be entitled to coverage here because the MVFRL does not provide sufficient protection to motorcyclists. For example, ABATE states:

1) Motorcyclists cannot recover first party benefits (75 Pa.C.S. § 1714);
2) Many insurers will not write a motorcycle on the same policy as a car;
3) Motorcyclists typically sustain serious injuries because of the nature of the vehicle they are occupying; and
4) Motorcycles are becoming more and more prevalent as a primary mode of transportation particularly in light of the ever increasing cost of gasoline.

ABATE Amicus Brief at 7–8. However, we do not necessarily see these circumstances—which apparently are tied to the increased risk of serious injury associated with motorcycles—as a proper basis to invalidate an otherwise legal and valid insurance policy exclusion. In this

policy on which Baker was an insured, the Erie policy covering his three other vehicles. *See* 75 Pa.C.S. § 1733(a). But the Erie policy has an exclusion precluding UIM coverage in this very situation, that is, where Baker was injured while driving a vehicle he owned, but did not insure with Erie-his motorcycle. As a result, Baker was not entitled to stack the coverages of his three Erie-insured vehicles because *there was no UIM coverage to stack.*[10]

case, Baker insured his motorcycle with $15,000 of UIM coverage, which was inadequate to compensate him for his injuries. ABATE indicates that $15,000 is the best he could do because insurers simply do not provide higher UIM limits for motorcycles. ABATE states that:
Motorcycle policies are often issued with low bodily injury liability limits because motorcycles typically do not cause a great deal of bodily injury [to others] when involved in collisions. Because the provisions of the Motor Vehicle Financial Responsibility Law mandate that an individual may not purchase underinsured motorist coverage in excess of the amount of her bodily injury liability limits [75 Pa.C.S. § 1734], the underinsured motorist coverage on a motorcycle policy is often inadequate. Thus, many seriously injured motorcyclists are not "made whole" and are often left grossly undercompensated.
ABATE Amicus Brief at 1–2. Assuming ABATE's description of the situation is accurate, it clearly reflects the higher risks and dangers of motorcycles. The practical problem of insuring motorcycles may be compared to the problems of insuring drivers with bad driving records, or pedestrians who do not own and insure a vehicle, or who do not otherwise have access to motor vehicle insurance. Our legislature has demonstrated in the past that it can structure alternative insurance programs to provide coverage in special risk situations. *See, e.g.,* 75 Pa.C.S. §§ 1741–1744 (Assigned Risk Plan); 75 Pa.C.S. §§ 1751–1757 (Assigned Claims Plan). The argument regarding inadequate insurance options for motorcyclists is better addressed to the legislature and does not, by itself, support the invalidation of an unambiguous policy provision which does not violate current law.

10. The Dissent claims that "most consumers of stacked coverage have not considered that their payment of increased premiums for stacking may be for naught if they are injured in one of their own vehicles, insured through a different policy." Dissenting Op. at 372, 972 A.2d at 517. This statement is unsupported by the record in this case. Nevertheless, the language of Erie's exclusion is clear. We are unpersuaded by the Dissent's suggestion that Erie here "elect[ed] to issue a policy differing from what the insured requested and paid for" without advising him of that change. Dissenting Op. at 372, 972 A.2d at 517 (quoting from *Tonkovic v. State Farm Mut. Auto. Ins. Co.,* 513 Pa. 445, 521 A.2d 920, 925 (1987)). There is no evidence that Erie engaged in the kind of "bait and switch" rightfully condemned in *Tonkovic. See Tonkovic,* 521 A.2d at 925 (holding that where an individual pays for

With regard to the instant policy exclusion, this Court's decision in *Prudential Prop. & Cas. Ins. Co. v. Colbert, supra,* is directly on point. Colbert was injured in an accident while driving his own vehicle, and recovered the maximum amount available under the tortfeasor's insurance coverage. 813 A.2d at 749. After recovering UIM benefits from the insurance policy covering his own vehicle (issued by State Farm), Colbert sought additional UIM coverage from the Prudential policy covering vehicles owned by his parents, with whom he resided. *Id.* Prudential sought declaratory judgment in federal court that its household exclusion precluded payment to Colbert, who had been injured while driving a vehicle not insured under his parents' Prudential policy. *Id.* In answering questions certified for appeal from the Third Circuit, this Court reasoned that Prudential could not be required to pay on a risk it did not knowingly insure and upheld application of the exclusion. 813 A.2d at 754–755. Thus, although the household exclusion was challenged by the insured as contravening public policy, a majority of this Court held the exclusion was valid, and functioned as an effective insurance cost-cutting measure. *Id.*

Likewise, in *Eichelman v. Nationwide Ins. Co., supra,* this Court rejected the insured's claims that the household exclusion was void as against public policy. Eichelman was struck and injured while riding his motorcycle, insured by Aegis Security Insurance Company (Aegis). The tortfeasor's insurer paid out its limits ($100,000), but apparently this did not cover Eichelman's injuries. 711 A.2d at 1007. Eichelman did not carry UIM coverage on his Aegis policy. Instead, he sought recovery of UIM benefits under his parents' two

specific disability insurance coverage, the insurer may not unilaterally change that coverage without an affirmative showing that the insured was notified of the change, regardless of whether the insured read the policy). Instead, as we have stated, Baker does have the right to stack the UIM coverage applicable to his Erie-insured vehicles, which is what he requested by refusing to sign a stacking waiver and choosing to pay higher premiums for his Erie policy. But Erie also unambiguously advised Baker that he would not be entitled to coverage if he was injured while occupying a motor vehicle he owned but did not insure under the Erie policy, *i.e.,* his motorcycle.

policies with Nationwide Insurance Company (Nationwide). *Id.* Eichelman qualified as an insured resident relative under each policy. But Nationwide denied coverage under a household exclusion that precluded payment to an insured who was injured while driving a vehicle not insured under the Nationwide policies, *i.e.,* Eichelman's motorcycle. *Id.* This Court approved the decision to deny coverage, holding that "allowing the 'household exclusion' language to stand supports the legislatively stated public policy of reducing insurance costs." 711 A.2d at 1010. *See also Alderson v. Nationwide Mut. Ins. Co.,* 884 A.2d 288 (Pa.Super.2005), *appeal denied,* 589 Pa. 717, 907 A.2d 1100 (2006) (holding household exclusion applied to deny UIM coverage to insured who was injured while riding his motorcycle insured under a separate policy issued by another insurer); *Old Guard Ins. Co. v. Houck,* 801 A.2d 559 (Pa.Super.2002), *appeal denied,* 572 Pa. 758, 818 A.2d 505 (2003) (same).

This Court's decisions in *Colbert* and *Eichelman* direct our result here.[11] We thus conclude that the Erie exclusion is valid as applied in this case. Accordingly, we affirm the Superior Court's decision upholding judgment on the pleadings in favor of Erie.[12]

Order affirmed.

11. Baker nonetheless points to *dicta* in *Craley* where the majority expressed "discomfort" with the "anomalous proposition" that a household exclusion may skirt the strict waiver provisions of the MVFRL by precluding stacking even in the absence of a valid Section 1738 waiver. 895 A.2d at 536. First, we note this statement referred specifically to the Superior Court's "flawed analysis of Section 1738" in *In re Insurance Stacking Litigation,* 754 A.2d 702 (Pa.Super.2000), which led that court to conclude erroneously that inter-policy stacking may not be waived. 895 A.2d at 536. Moreover, because this Court's decision in *Craley* rested on the insured's written waiver of stacking, and the majority explicitly declined to address the validity of the household exclusion, any discussion of the household exclusion in *Craley* does not direct a different result here.

12. Amicus PAJ argues that our decision will allow insurance companies "to circumvent the UM/UIM statutory stacking scheme required by the legislature, simply by placing all of a named insured's owned vehicles on multiple single vehicle policies, bury a household exclusion deep in each policy, and collect a windfall on UM/UIM premiums." PAJ Amicus Brief at 18. PAJ identifies two insurance companies that

Chief Justice CASTILLE and Justice EAKIN join the opinion.

Justice SAYLOR files a concurring opinion.

Justice BAER files a dissenting opinion in which Justice TODD and Justice McCAFFERY join.

Justice SAYLOR concurring.

I concur in the result only, as I believe Appellant's argumentation is stronger than the lead opinion portrays. As Appellant ably explains, the *Colbert* and *Eichelman* decisions, upon which the lead Justices rely, are readily distinguishable. For example, in those cases, this Court did not examine the express requirements of the stacking provisions of the Motor Vehicle Financial Responsibility Law, *see* 75 Pa.C.S. § 1738, upon which Appellant relies. Rather, *Colbert* and *Eichelman* were litigated and decided on more general public policy grounds. *See* Brief for Appellant at 26–28.[1]

Nevertheless, I am persuaded that the amendments to the MVFRL codified at Section 1738 do not invalidate long-standing policy exclusions (including regularly-used non-owned car, household, and territorial exclusions) rooted in ensuring the collection of reasonable premiums (with reasonableness being monitored by the Insurance Department). Had the Legislature intended to invalidate these, I believe, it would have done so more directly. Instead, to the extent the General Assembly even considered the matter,[2] it seems most

allegedly employ this technique to "defeat the mandatory stacking requirement in precisely this way," and appends documentation to its brief that supposedly proves this fact. We note that Erie is not one of the named insurers, and that PAJ's attachments are not part of the record in this case. This information is more properly directed to the legislature, or to tribunals and government agencies handling matters directly involving the named insurers and their insurance practices.

**1.** The observation, in the lead opinion, that statutes are an embodiment of public policy is correct. *See* Opinion Announcing the Judgment of the Court, at 362 n. 7, 972 A.2d at 511 n. 7. However, I fundamentally disagree with the approach of applying decisions which did not consider a discrete statutory provision to answer the question of what policy such provision establishes. *See id.*

**2.** The complex development of the decisional law in this arena demonstrates that the coverage of the MVFRL is so broad that it would not

likely to me that it regarded these types of exclusions separate and apart from priority-of-recovery and stacking questions.[3] As such, I believe it is most reasonable to treat these exclusions as going to the scope of the UM/UIM coverage in the first instance, before stacking questions are reached, rather than as an aggregation question arising under the stacking provisions.

My position also incorporates thoughts I previously developed concerning the many difficulties presented by the MVFRL, including the question of what the Legislature meant in the requirement to offer "uninsured or underinsured motorist coverage," and specifically, the degree of portability the General Assembly intended to be associated with these concepts. *See, e.g., Burstein,* 570 Pa. at 219–23, 809 A.2d at 230–32 (Saylor, J., dissenting).

### Justice BAER dissenting.

I respectfully dissent from the decision of the Majority based upon my conclusion that the "household exclusion"

have been possible for anyone to anticipate the law's application in the myriad of factual scenarios which have unfolded. For this reason, I have previously expressed my belief that the Legislature intended for the administrative agency with expertise in the field to fill in the substantial gaps via well developed regulations (subject, of course, to judicial review to ensure consistency of those regulations with the legislative objectives). *See, e.g., Generette v. Donegal Mut. Ins. Co.,* 598 Pa. 505, 528, 957 A.2d 1180, 1194–95 (2008) (Saylor, J., concurring and dissenting). Notably, this Court recently expressed its concern with the agency's performance of such rulemaking responsibilities. *See Nationwide Ins. Co. v. Schneider,* 599 Pa. 131, 145 n. 8, 960 A.2d 442, 450 n. 8 (2008).

3. This Court already has applied similar logic to the priority-of-recovery provisions of Section 1733, 75 Pa.C.S. § 1733. *See Burstein v. Prudential Property and Cas. Ins. Co.,* 570 Pa. 177, 186 n. 7, 809 A.2d 204, 209 n. 7 (2002) (stating that, "[w]hile Section 1733 contemplates that UM and UIM coverage may be portable in some instances, it does not suggest that UM or UIM coverage would extend where the coverage has been specifically excluded"); *accord Colbert,* 572 Pa. at 89 n. 3, 813 A.2d at 751 n. 3 (same). I do realize, however, that this rationale is difficult to reconcile fully with some indications in the majority decision in *Generette,* 598 Pa. at 522, 957 A.2d at 1191. *See generally id.* at 526–27, 957 A.2d at 1193–94 (Saylor, J., concurring and dissenting) (developing the tension between *Generette,* on the one hand, and *Burstein* and *Colbert* on the other).

operates as a waiver of stacking, and thus contradicts and undermines the very specific statutory provisions set forth in the Motor Vehicle Financial Responsibility Law ("MVFRL") establishing the methodologies an insurer must employ to protect a consumer from an inadvertent waiver of stacking. *See* 75 Pa.C.S. § 1738. Indeed, I believe that this case exemplifies the antithesis of these statutory provisions.

Initially, I agree with Justice Saylor's concurring opinion that the Majority's reliance on the analysis allowing for the enforcement of household exclusions in *Prudential Insurance v. Colbert*, 572 Pa. 82, 813 A.2d 747 (2002), and *Eichelman v. Nationwide Insurance*, 551 Pa. 558, 711 A.2d 1006 (1998), is misplaced because those cases considered whether a household exclusion violated general public policy and did not address the interaction between the household exclusion and the specific language of § 1738. However, I differ with the concurring opinion because I conclude that the household exclusion violates § 1738, and thus is unenforceable. *See Colbert*, 813 A.2d at 751 ("[S]tipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws") (citations omitted).

Under § 1738 of the MVFRL, stacked coverage is the default coverage: "The limits of coverages available under this subchapter for an insured *shall* be the sum of the limits for each motor vehicle as to which the injured person is an insured."[1] 75 Pa.C.S. § 1738(a). To reject the default provi-

---

1. 1738. Stacking of uninsured and underinsured benefits and option to waive

 (a) Limit for each vehicle.—When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. *The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.*

 \* \* \* \*

 (d) Forms.—

sion of stacked coverage, an insurer must provide the insured with a statutorily prescribed waiver form which the named insured must sign. 75 Pa.C.S. § 1738(d). If the waiver form set forth in § 1738(d) is not signed and dated by the named insured, the waiver is void. 75 Pa.C.S. § 1738(e).

In this case, Appellant did not waive stacking on his automobile policy covering three automobiles with $100,000 of underinsured motorist (UIM) coverage on each automobile. Instead, he paid increased premiums to purchase UIM coverage and to obtain stacked coverage of up to $300,000. Additionally, he paid increased premiums to obtain stacked UIM coverage on the policy covering his motorcycle.[2] Under the

> (1) *The named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the following written rejection form:*
> UNINSURED COVERAGE LIMITS
> By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.
> * * * *
> (2) The named insured shall be informed that he may exercise the waiver of the stacked limits of underinsured motorist coverage by signing the following written rejection form:
> UNDERINSURED COVERAGE LIMITS
> By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.
> * * * *
> (e) Signature and date.—The forms described in subsection (d) must be signed by the first named insured and dated to be valid. *Any rejection form that does not comply with this section is void.*
> 75 Pa.C.S. § 1738 (emphasis added).

**2.** As noted by the Majority, Appellant's amicus have suggested that Appellant may not have been able to add his motorcycle to the policy covering his automobiles or to insure his motorcycle for more than

Majority Opinion, however, the household exclusion operates to eliminate the stacking, for which Appellant paid premiums, through the inclusion of the following language: "This insurance does not apply to ... damages sustained by anyone we protect while occupying or being struck by a motor vehicle owned by you or a relative, but not insured for Uninsured or Underinsured Motorists Coverage under this policy." This language in no way reflects the language provided in § 1738(d), and therefore, cannot operate as a valid waiver of stacking.

The Majority and the Concurrence conclude that the household exclusion does not operate as a waiver of stacking, but instead precludes underinsured motorist (UIM) coverage prior to any consideration of stacking. The concurrence determines that, to the extent that the General Assembly actually considered the matter, the Legislature likely regarded exclusions and stacking as separate issues. It therefore concludes that the exclusions frame the scope of UIM coverage, and thus do not effect the application of the stacking provisions because stacking does not apply when an accident does not come within the scope of the UIM coverage of the policy in question. The proverbial bottom line deriving from this analysis is the employment of the household exclusion to deny an insured the benefits of stacking, for which he paid, without complying with the statutorily mandated waiver provisions, in violation of the clear language of the legislature. Rather than requiring an overt act of waiver by the named insured pursuant to the specific form as specified in § 1738(d), the household exclusion does not even require the insurer to demonstrate that the insured was aware of the exclusion.

As noted by the concurrence, Concurring Op. at 367–68, n. 2, 972 A.2d at 515, n. 2, the MVFRL fails to provide specifically for many circumstances including this one, and arguably, the legislature did not consider the interaction of these two scenarios. More significantly, I have no doubt that most consumers of stacked coverage have not considered that their

$15,000 of UIM coverage. *See* Maj. Op. at 363–64, n. 9, 972 A.2d at 512, n. 9. Thus, if accepted, Appellant purchased the best coverage available.

payment of increased premiums for stacking may be for naught if they are injured in one of their own vehicles, insured through a different policy.

I acknowledge that the Majority correctly asserts the general law that "an insured's failure to read carefully the clear and unambiguous terms of his insurance policy has never furnished grounds to invalidate those terms or otherwise nullify them." Maj. Op. at 362, 972 A.2d at 511. However, we have distinguished the case relied upon by the Majority, *Standard Venetian Blind v. American Empire Insurance Co.*, 503 Pa. 300, 469 A.2d 563 (1983), and refused to apply it to cases where the insured receives a policy that differs from the policy requested:

> We find a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested, and cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for. When the insurer elects to issue a policy differing from what the insured requested and paid for, there is clearly a duty to advise the insured of the changes so made. The burden is not on the insured to read the policy to discover such changes, or not read it at his peril.

*Tonkovic v. State Farm Mutual Auto. Ins. Co.*, 513 Pa. 445, 521 A.2d 920, 925 (1987). While my esteemed colleagues may contend that the household exclusion is one of the "clauses that are a usual incident of the coverage," I would suggest that the consumer who does not waive stacking and agrees to pay the increased premiums associated with stacking is requesting a policy that actually provides stacking. The insured would not expect the decision to pay an increased premium for stacking to be undercut by a household exclusion buried in the fine print of the policy, without the insurer advising the insured of this restriction.

Moreover, if the allegation is true that consumers cannot add motorcycles to their automobile policies and cannot obtain higher UIM coverage for their motorcycles, then insurers are

selling consumers stacked UIM coverage for increased premiums, without any intention of allowing the consumers to benefit from that coverage in one of the most common scenarios, where the insured is injured in a household vehicle. Under the Majority's holding, this denial of coverage may occur without the insurer informing the consumer of this unexpected hole in their coverage.

In short, I believe this Court should consider itself bound by the affirmative statements of the MVFRL that require an explicit waiver of stacking on a specific waiver form. Rather than interpreting legislative silence as approving of the household exclusion, I conclude that the household exclusion violates the stated requirements that the waiver of stacking occur through a clear affirmative act, and accordingly, dissent from the decision to enforce the exclusion.

Justice TODD and Justice McCAFFERY join this dissenting opinion.