[J-18-2018] [MO: Baer, J.]

# IN THE SUPREME COURT OF PENNSYLVANIA
## WESTERN DISTRICT

| | | |
|---|---|---|
| BRIAN GALLAGHER, | : | No. 35 WAP 2017 |
| | : | |
| Appellant | : | Appeal from the Order of the Superior |
| | : | Court entered January 27, 2017 at No. |
| | : | 352 WDA 2016, affirming the Order of |
| v. | : | the Court of Common Pleas of |
| | : | Westmoreland County entered |
| | : | February 18, 2016 at No. 5561 of |
| GEICO INDEMNITY COMPANY, | : | 2014. |
| | : | |
| Appellee | : | ARGUED:  April 10, 2018 |

## DISSENTING OPINION

**JUSTICE WECHT**                    **DECIDED:  JANUARY 23, 2019**

The Motor Vehicle Financial Responsibility Law ("MVFRL") requires automobile insurers to offer their customers uninsured and underinsured motorist coverage ("UM" and "UIM," respectively).  It also provides that, when multiple vehicles are insured on one or more policies, UM and UIM coverage is "stacked" by default, meaning that the amount of coverage "shall be the sum of the limits for each motor vehicle as to which the injured person is an insured."  75 Pa.C.S. § 1738(a).  Named insureds nevertheless may elect to waive stacked limits of coverage, in exchange for a reduced premium, by signing a written waiver form.  *Id.* §§ 1738(b)-(c).

Today's learned Majority holds that household vehicle exclusions—clauses that preclude UM and UIM coverage for injuries occurring while a claimant is occupying a household vehicle that is either uninsured or insured on a separate policy—conflict with Section 1738 of the MVFRL and therefore cannot be enforced unless the insured has waived stacking.  The Majority's analysis conflates the rejection of stacking (which

requires a written waiver) with the exclusion of certain acts or occurrences from the defined scope of coverage itself (which requires no waiver). Contrary to the Majority's conclusion, nothing in the text of the MVFRL prohibits household vehicle exclusions. I respectfully dissent.

The facts of this case are straightforward. Brian Gallagher suffered severe injuries when his motorcycle was struck by an underinsured motorist on Route 982 in Westmoreland County. At the time of the accident, GEICO Indemnity Company insured Gallagher's motorcycle under a policy ("the motorcycle policy") that included $50,000 of UIM[1] coverage. Gallagher also owned two automobiles, which GEICO insured under a separate policy ("the automobile policy") that included UIM coverage of $100,000 per vehicle.[2] Gallagher did not waive stacking on either of his GEICO policies.

After the accident, Gallagher settled his personal injury claim against the underinsured motorist. Because his damages exceeded the amount of that settlement, Gallagher also filed claims with GEICO seeking UIM benefits under both of his own insurance policies. GEICO paid Gallagher $50,000 (the motorcycle policy's UIM coverage limit), but refused to pay benefits under the automobile policy. GEICO's denial relied upon the automobile policy's household vehicle exclusion, which stated that "coverage does not apply to bodily injury while occupying or from being struck by a vehicle owned or leased by you or a relative that is not insured for Underinsured Motoris[t] Coverage under this policy." R.R. 66a. Because Gallagher was injured while occupying

---

[1] UIM coverage provides compensation to insureds if they are injured by a third-party tortfeasor who lacks sufficient coverage to compensate the insured fully.

[2] GEICO made the decision to issue two separate policies rather than cover all of Gallagher's vehicles on a single policy. GEICO did this because, like many insurers, it adheres to underwriting practices that do not permit motorcycles to be added onto a family automobile policy. R.R. 113a-114a; *see Erie Ins. Exchange v. Baker*, 972 A.2d 507, 512 n.9 (Pa. 2008) (OAJC) (citing an *amicus* brief filed by the Alliance of Bikers Aimed Toward Education of Pennsylvania).

a vehicle that he owned, but which was not insured "under this policy" (*i.e.*, the automobile policy), GEICO maintained that Gallagher's claim was barred by the household vehicle exclusion.

Gallagher then sued GEICO, arguing that the household vehicle exclusion in the automobile policy is unenforceable because it conflicts with Section 1738 of the MVFRL. That Section provides that "[w]hen more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured." 75 Pa.C.S. § 1738(a).

The lower courts sided with GEICO, citing a long line of Pennsylvania cases that have rejected the argument that household vehicle exclusions conflict with Section 1738 of the MVFRL. For example, the Superior Court relied upon this Court's decision in *Erie Ins. Exchange v. Baker*, 972 A.2d 507 (Pa. 2008) (OAJC). The named insured in that case owned three automobiles (all insured by Erie Insurance) and one motorcycle (insured by Universal Underwriters Insurance Company). Both the Erie policy and the Universal Underwriters policy included stacked UIM coverage. While operating his motorcycle, the insured was injured by an underinsured motorist. Universal Underwriters paid UIM benefits under the motorcycle policy, but Erie denied the insured's claim for UIM benefits because the automobile policy included a household vehicle exclusion.

The Opinion Announcing the Judgment of the Court—authored by Justice Greenspan and joined by Chief Justice Castille and Justice Eakin—rejected Baker's claim that the household vehicle exclusion was effectively a "disguised waiver" of stacking that violated the MVFRL's explicit waiver requirements. *Id.* at 511. Then-Justice (now Chief

Justice) Saylor concurred in the result, and supplied the fourth vote in support of the Court's holding that Erie's household vehicle exclusion was valid and enforceable. *Id.* at 514 (Saylor, J., concurring).

In today's appeal, Gallagher attempts to distinguish his case from *Baker*. He asks this Court to hold that GEICO's household vehicle exclusion conflicts with Section 1738 of the MVFRL specifically because GEICO unilaterally decided to issue separate policies for the Gallagher household. *See* Brief for Gallagher at 19. Gallagher notes that the insured in *Baker* purchased policies from two different insurance companies, while Gallagher did business only with GEICO, which opted to insure Gallagher's motorcycle on one policy and his automobiles on another. According to Gallagher, this distinction is critical, inasmuch as the Opinion Announcing the Judgment of the Court in *Baker* emphasized that the household vehicle exclusion in that case operated to protect the insurer from being forced to cover a risk (the insured's motorcycle) that it did not knowingly insure or that it did not collect sufficient premiums to underwrite. *Baker*, 972 A.2d at 511.

Apparently unpersuaded that this case is distinguishable from *Baker*, today's Majority simply overrules that decision.[3] The Majority then accepts the same argument

---

[3] The Majority claims that *"Baker* does not raise concerns regarding *stare decisis*" because it was a non-binding plurality decision. While it is true that the lead opinion in *Baker* was a three-Justice Opinion Announcing the Judgment of the Court, today's Majority disregards the fact that a majority of the Justices in *Baker* agreed that the household vehicle exclusion is not a "disguised waiver" of stacking that skirts the express waiver requirements of the MVFRL. *See Baker*, 972 A.2d at 510; *id.* at 515 (Saylor, J., concurring) (agreeing that "the amendments to the MVFRL codified at Section 1738 do not invalidate long-standing policy exclusions").

Contrary to the Majority's claim, the lead opinion in *Baker* and the *Baker* concurrence did not offer "different rationales." Majority Opinion at 6. They offered exactly the same rationale; to wit, that Section 1738's waiver-of-stacking requirements have no bearing on the enforceability of household vehicle exclusions. *See Baker*, 972 A.2d at 511 ("[A]pplication of the household exclusion in this case does not involve 'stacking' at all. We hold instead that the Erie policy exclusion is a valid and unambiguous preclusion of coverage of unknown risks[.]"); *id.* at 515 (Saylor, J., concurring) (opining

that this Court rejected in *Baker*, to wit, that the household vehicle exclusion "acts as a *de facto* waiver of stacked UIM coverage." Majority Opinion at 10. That is a flawed holding, one that will have consequences far beyond this case. Note, for example, that the Majority's "*de facto* waiver" rationale would apply even if GEICO had not known about Gallagher's motorcycle. In other words, the Majority interprets Section 1738 to mean that automobile insurers are required to cover unknown risks that were never factored into the calculation of insureds' premiums.[4]

Consider this: If GEICO's household vehicle exclusion is unenforceable because, as the Majority tells us, it "acts as a *de facto* waiver of stacking," then all UM/UIM exclusions must necessarily be unenforceable. To understand the nature of the problem, and its implications in our law, we need only refer to another clause in Gallagher's automobile policy: Just below the household vehicle exclusion at issue in this case, the automobile policy provides that "[t]his coverage does not apply to damage caused by an insured's participation in or preparation for any racing, speed[,] or demolition contest or stunting activity of any nature, whether or not prearranged or organized." R.R. at 63a.

that the General Assembly regarded the enforceability of exclusionary clauses as an issue "separate and apart from priority-of-recovery and stacking questions"). The key difference between the two opinions is that the lead opinion relied upon this Court's prior decisions in *Prudential Property & Cas. Ins. Co. v. Colbert*, 813 A.2d 747 (Pa. 2002) and *Eichelman v. Nationwide Ins. Co.*, 711 A.2d 1006 (Pa. 1998), whereas Justice Saylor believed that those decisions were distinguishable. Despite that minor difference, this Court (until today) correctly has recognized that *Baker*'s general holding constitutes binding precedent. *Williams v. GEICO*, 32 A.3d 1195, 1208 (Pa. 2011) ("A **majority** of this Court [in *Baker*] held that the MVFRL's stacking provisions did not preclude application of the household exclusion." (emphasis added)).

[4]     The Majority also claims that Gallagher is being deprived of coverage for which he paid. Majority Opinion at 11. Not so. Gallagher did not pay for UM/UIM coverage under the automobile policy for injuries that he suffered while operating his motorcycle, since the policy unambiguously excluded such incidents from the scope of coverage. What Gallagher did pay for, and what he received, was the ability to stack the limits of coverage on each of the household vehicles listed on the automobile policy.

Most would consider this daredevil exclusion to be a reasonable restriction "rooted in ensuring the collection of reasonable premiums." *Baker*, 972 A.2d 515 (Saylor, J., concurring). Yet, under the Majority's view, GEICO's unambiguous exclusion of UM/UIM coverage for vehicles driven in a drag race or demolition derby necessarily would be unenforceable, as a "*de facto* waiver of stacking."[5] This is a remarkable development. I am unaware of any court that has reached such a conclusion.

The Majority does not explain why our General Assembly would have created such a baffling system, or why the General Assembly has remained silent while state and federal courts across the Commonwealth consistently have rejected this interpretation of the MVFRL.[6] Under these circumstances, it is unsurprising that the Majority's interpretation of the governing statute seems strained and counterintuitive. It is far more likely that the General Assembly intended for courts to evaluate the scope of applicable coverage *before* considering whether the limits of that coverage should be stacked or unstacked. *See Baker*, 972 A.2d 515 (Saylor, J., concurring) ("I believe it is most

---

[5] Interestingly, the Majority suggests that it might be prepared, "at some later date," to foreswear today's unpersuasive "*de facto* waiver" rationale and opt instead to enforce other UM or UIM exclusions. Majority Opinion at 12 n.8. The possibility that this Court might be willing to interpret what it today characterizes as "the plain language" of the MVFRL (*id.* at 12 n.7) differently in some future case is hardly an endorsement of the Majority's legal analysis. If anything, it suggests that today's decision is premised more upon a policy judgment than upon a discernible legal principle. This policy judgment might be utterly reasonable; but it is not ours to make. It seems that this Court is destined to remain in the exclusion-umpiring business for the foreseeable future.

[6] *See*, *e.g.*, *Royal Ins. Co. of Am. v. Beauchamp*, 2002 WL 734344, at \*5 (E.D. Pa. 2002) (holding that a household vehicle exclusion prevented claimant from recovering additional UIM benefits under his brother's insurance policy); *Nationwide Mut. Ins. Co. v. Riley*, 352 F.3d 804 (3d Cir. 2003) (holding that a household vehicle exclusion prevented claimant from recovering additional UIM benefits under her father's insurance policy); *Alderson v. Nationwide Mut. Ins. Co.*, 884 A.2d 288, 290 (Pa. Super. 2005) (holding that a household vehicle exclusion prevented claimant from recovering additional UIM benefits under a separate motorcycle policy); *Ayers*, 955 A.2d at 1029 (holding that a household vehicle exclusion precluded claimant from stacking UIM coverage across multiple policies), *aff'd by an equally divided court, Ayers*, 18 A.3d at 1093.

reasonable to treat these exclusions as going to the scope of the UM/UIM coverage in the first instance, before stacking questions are reached, rather than as an aggregation question arising under the stacking provisions."). As with any contract, we are bound as an antecedent matter first to determine the scope of the deal itself (*i.e.*, what is excluded from the contract's coverage) before we turn to application of the deal's terms to the particular dispute.

Section 1738 governs an insured's binary choice to accept or reject stacking. It says nothing at all about insurance policy exclusions that limit, as a threshold matter, the scope of UM/UIM coverage. If the General Assembly had intended—either in Section 1738 or elsewhere—to bar insurance policy exclusions that limit the scope of UM/UIM coverage, it could (and presumably would) have done so explicitly. Indeed, the General Assembly did just that when it wished to prohibit other kinds of exclusions. *See, e.g.*, 75 Pa.C.S. § 1724(b) ("Provisions of an insurance policy which exclude insurance benefits if the insured causes a vehicular accident while under the influence of drugs or intoxicating beverages at the time of the accident are void.").

After upending this Court's well-established precedent, the Majority's parting wisdom to Pennsylvania insurers is simply that they should use their "considerable resources" to mitigate the damage that the Court inflicts today. Majority Opinion at 12 n.6. The Majority also suggests that, "when multiple policies or insurers are involved, an insurer can require disclosure of all household vehicles and policies as part of its application process." *Id.* Of course, that would not fix the problems that the Majority's holding is sure to cause, since insureds routinely add new household vehicles—or even new household members—long after the "application process" has concluded. And, significantly, the Majority proposes no solution for the thousands of existing policies that insurers have issued in reliance upon the law as it existed prior to today.

The Majority overlooks the fact that today's decision necessarily would prohibit the enforcement of *any* exclusion that prevents an insured in Gallagher's situation from collecting stacked UM or UIM benefits. The Majority does not explain how insurers should deal with the added risk of household vehicles that they did not know about, street-racing accidents for which they tried to exclude coverage, or motorcycles that the insured did not disclose. The answer, we all must recognize with candor, is that insurers deprived of the underwriting tool of contractual exclusions will be forced to resort instead to a broad and crude proxy: a hike in premiums for all Pennsylvania policyholders without regard to excluded risks. This is the very outcome that the General Assembly sought to avoid when it enacted the MVFRL.

I respectfully dissent.