KEARNEY, District Judge
Under section 1738 of the Motor Vehicle Financial Responsibility Law effective in July 1990, a Pennsylvanian buying auto insurance may pay increased premiums to stack his underinsured motorist coverage to provide more coverage for another vehicle insured by his family in the same household by the same insurer. He is entitled to this stacking unless he signs a form waiving this right. Avoiding the form waiver, insurers introduced "household exclusions" precluding stacking underinsured coverage when the vehicle involved in the accident is not listed on every insurance policy issued to family members in the same house. For over twenty-eight years, Pennsylvania courts wrestled with the insurers' household exclusion compared to section 1738. In August 2017, the Pennsylvania Supreme Court agreed to hear an appeal on whether the household exclusion violated Pennsylvania Law. On January 23, 2019, the Pennsylvania Supreme Court held this household exclusion violated section 1738 at least when the same insurer agreed to stacking on different vehicles operated by family members in the same house. An injured insured now seeks a declaratory judgment and damages after his insurer declined stacking under the identical household exclusion language. The insurer moves to dismiss arguing the *428 January 23, 2019 decision does not apply to the insured's earlier-issued policies. After careful analysis of the varied caselaw, we hold the decision did not announce a new rule but interpreted the law for the first time in a retroactive precedential decision. We deny the insurer's motion to dismiss.
I. Plead facts.
Pennsylvanian Francis J. Butta insured his motorcycle with an underinsured motorist ("UIM") coverage policy issued by GEICO Indemnity Company providing $ 15,000/$ 30,000 of stacked coverage.[1] He lives with his parents, Francis R. Butta and Yvonne Butta.[2] His parents insured their two cars with a separate UIM policy issued by GEICO Casualty Company providing up to $ 200,000 of stacked coverage.[3]
UIM provides coverage to an insured when the insurance of the tortfeasor causing the insured harm is insufficient to cover the insured's damages.[4] "Inter-policy stacking" allows an insured to accumulate multiple coverages under different policies in the same household.[5] An insured pays a higher premium to stack coverages. Francis J. Butta and his parents stacked their coverages.[6] His parents' GEICO policy contained an amendment referred to as a "household exclusion,"[7] noting the coverage "does not apply to bodily injury while occupying or from being struck by a vehicle owned or leased by you or a relative that is not insured for Underinsured Motorists Coverage under this policy."[8]
On July 20, 2017, Francis J. Butta suffered severe injuries while riding his motorcycle after an underinsured driver, June E. Rosengrant, struck Mr. Butta with her car.[9] Ms. Rosengrant's liability coverage provided $ 300,000 in compensation to Mr. Butta, insufficient to compensate him for his injuries.[10] Mr. Butta then collected $ 15,000 from his own UIM coverage.[11] His compensation still insufficient, Mr. Butta next made a claim under the UIM policy issued to his parents.[12]
GEICO denied his claim for UIM coverage under his parents' policy on August 18, 2017.[13] GEICO based its denial on the household exclusion reading: "When This Coverage Does Not Apply[:] This coverage does not apply to bodily injury while occupying or from being struck by a vehicle owned or leased by you or a relative that is not insured for Underinsured Motorist Coverage under this policy."[14] GEICO explained Mr. Butta's parents' UIM coverage did not apply to Mr. Butta because he is related to the policyholders and their GEICO policy did not insure his motorcycle.[15]
*429 II. Analysis
Mr. Butta sued GEICO on January 23, 2019 seeking we declare he is entitled to recover stacked underinsured motorist coverage under his parents' policy and compensatory damages for a breach of contract.[16] He alleges the "household exclusion" is not enforceable under the Pennsylvania Supreme Court's January 23, 2019 holding in Gallagher v. GEICO Indemnity Co.[17] In Gallagher , the Pennsylvania Supreme Court held the same household exclusion relied upon by GEICO today in denying coverage violates Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL"). Mr. Butta argues the Pennsylvania Supreme Court's decision applies retroactively to his policy in effect before the Pennsylvania Supreme Court's January 2019 decision. GEICO moves to dismiss seeking to uphold its denial of coverage arguing the Pennsylvania Supreme Court January 23, 2019 holding is not retroactive.[18]
On July 1, 1990, the General Assembly amended the MVFRL to provide, "[w]hen more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured."[19] This policy, called "stacking," applies unless an insured affirmatively waives it.[20] The MVFRL contains a form insureds must sign to properly waive stacking.[21] Under policies with a "household exclusion," however, stacking does not cover people living in the same household as the insured but not included in the insured's policy.[22]
On January 23, 2019, the Pennsylvania Supreme Court held the household exclusion violates the MVFRL "under the facts *430 of this case insomuch as it acts as a de facto waiver of stacked UIM coverage provided for in the MVFRL."[23] GEICO argues it legally denied Mr. Butta's claim under the household exclusion, as the household exclusion constituted an enforceable exception when Mr. Butta's policy applied and when he made his claim.[24] Mr. Butta does not dispute the language of his parents' policy, if enforceable, excluded coverage. He instead argues the Pennsylvania Supreme Court's Gallagher decision bars the application of the household exclusion.
A. How do we decide if Gallagher is retroactive?
Because the Pennsylvania Supreme Court did not decide whether Gallagher applies to the same language in pre-policies issued to other persons, we "must predict how Pennsylvania's highest court would decide this case."[25] "In predicting how the highest court of the state would resolve the issue, [we] must consider relevant state precedents, analogous decisions, considered dicta, scholarly works, and any other reliable data tending convincingly to show how the highest court in the state would decide the issue at hand."[26]
"To determine whether a decision should have retroactive effect, a court should first determine whether the decision announced a new rule of law."[27] "A decision announces a new rule of law if it overrules prior law, expresses a fundamental break from precedent that litigants may have relied on, or decides an issue of first impression not clearly foreshadowed by precedent."[28] "One of the hallmarks of whether [the Pennsylvania Supreme Court] has issued a new rule of law is if the decision overrules, modifies, or limits any previous opinions of [the Pennsylvania Supreme] Court."[29] As to statutory law like the MVFRL, when the Pennsylvania Supreme Court has "not yet answered a specific question about the meaning of a statute, [its] initial interpretation does not announce a new rule of law."[30] Its "first pronouncement on the substance of a statutory provision is purely a clarification of an existing law,"[31] In such cases, the Pennsylvania Supreme Court's interpretation of the statute "constitutes its meaning from its inception."[32] And is retroactive.
But if a case announces a new rule, Pennsylvania courts generally give the rule retroactive application only to "cases that are pending at the time the new rule is announced."[33] Still, whether to apply a decision retroactively is a matter of "judicial discretion which must be exercised on a case by case basis."[34] We should consider whether: "(1) retroactive effect *431 will further or hinder the purpose of the new rule; (2) the parties will be unfairly prejudiced because they relied on the old rule; and (3) giving the new rule retroactive effect will detrimentally affect the administration of justice."[35]
Mr. Butta argues Gallagher did not announce a new rule of law, instead announcing only a judicial construction of the MVFRL which is now part of the MVFRL from its inception. GEICO argues Gallagher overruled Pennsylvania law, meaning it is a new rule which should not be applied retroactively to policies in place before Gallagher.
B. The case law before Gallagher.
The Pennsylvania Supreme Court considered the validity of "household exclusion" clauses on several occasions with facts like Mr. Butta's case. The issue is whether those earlier cases defined Pennsylvania law.
1. Eichelman
In its 1998 decision in Eichelman v. Nationwide Insurance Co. , the Pennsylvania Supreme Court held a person who lived with his parents could not recover under their policy after he suffered injury riding his motorcycle because the household exclusion clause in their contract did not violate public policy and the parents' policy did not insure the plaintiff's motorcycle.[36] Unlike Mr. Butta, though, the Eichelman plaintiff did not have UIM on his motorcycle, so the court had no occasion to discuss stacking.[37] The Pennsylvania Supreme Court held allowing the plaintiff to recover "would allow an entire family living in a single household with numerous automobiles to obtain underinsured motorist coverage for each family member through a single insurance policy on one of the automobiles in the household,"[38] which contradicted the Pennsylvania General Assembly's intent in passing the MVFRL-to "stop the spiralling costs of automobile insurance in the Commonwealth."[39]
2. Colbert
In 2002, the Pennsylvania Supreme Court considered the public policy of the household exception anew in Prudential Property and Casualty Insurance Co. v. Colbert after our Court of Appeals certified the question.[40] The plaintiff, who lived with his parents, suffered injury driving his automobile, which he insured with UIM.[41] After collecting the maximum coverage under his own policy, he sought to recover under his parents' policy, which a different company issued and which did not insure plaintiff's automobile.[42] The insurance company denied the claim under the household exclusion.[43] The Pennsylvania Supreme Court again upheld the household exclusion, holding voiding the exclusion would yield "gratis coverage on a vehicle that the insurer never knew existed."[44] Because the parents' insurer never knew the plaintiff's car even existed, held the Pennsylvania Supreme Court, the insurer would "be compelled to underwrite unknown risks that the insureds neither disclosed nor paid to insure."[45]
*432 3. Riley
Our Court of Appeals in 2003 found the household exclusion did not violate public policy in Nationwide Mutual Insurance Co. v. Riley , relying on Colbert.[46] Plaintiff and her father insured their automobiles with UIM under separate policies issued by Nationwide.[47] Plaintiff suffered injury, recovered under her policy, and then tried to recover under her father's policy, but the insurer denied coverage based on its household exclusion.[48] Our Court of Appeals found Colbert controlled its decision even though, unlike Colbert , plaintiff sought to recover under a policy issued by the same insurer which issued her policy.[49] Our Court of Appeals did not think the distinction "turn[ed] the tide" because upholding the policy exclusion would still further the public policy of the MVFRL to "contain[ ] insurance costs."[50]
4. Baker
The most central pre- Gallagher opinion of the Pennsylvania Supreme Court is its 2008 plurality decision in Erie Insurance Exchange v. Baker , where it considered whether the household exclusion violated the MVFRL's requirement for an insured to waive stacking.[51] The plaintiff insured his three automobiles with stacking UIM up to $ 300,000 with Erie Insurance, and separately insured his motorcycle with UIM up to $ 15,000 with Universal Insurance.[52] He did not sign a waiver of his rights to stack the coverages.[53] The plaintiff suffered injury while riding his motorcycle, collected from the tortfeasor's policy, collected $ 15,000 from Universal, and then sought UIM from Erie.[54] Erie denied coverage, citing the household exclusion in the Erie policy.[55] A three-justice plurality of the seven-Justice Pennsylvania Supreme Court held the case did "not involve 'stacking' at all" because the unambiguous household exclusion in the Erie policy excluded plaintiff's motorcycle from coverage.[56] The Pennsylvania Supreme Court held its decisions in Eichelman and Colbert "direct[ed]"[57] its result in Baker , emphasizing "there was no UIM coverage to stack. "[58] The Pennsylvania Supreme Court concluded the exclusion "is valid as applied in this case."[59]
Justice Saylor concurred "in the result only."[60] He found Eichelman and Colbert "readily distinguishable" because they "were litigated and decided on more general public policy grounds."[61] The three dissenting Justices agreed the plurality's reliance on Colbert and Eichelman "is misplaced because those cases considered whether a household exclusion violated general public policy and did not address the interaction between the household exclusion *433 and the specific language of § 1738."[62] But Justice Saylor still found the General Assembly's intent behind the MVFRL, "ensuring the collection of reasonable premiums,"[63] directed the same result the plurality reached.[64] Justice Saylor thought "[h]ad the Legislature intended to invalidate [long-standing policy exclusions], it would have done so more directly."[65] Justice Saylor concluded "it is most reasonable to treat these exclusions as going to the scope of the UM/UIM coverage in the first instance, before stacking questions are reached, rather than as an aggregation question arising under the stacking provisions."[66]
5. Ayers
In facts most similar to Mr. Butta's claim, an evenly divided Pennsylvania Supreme Court per curiam affirmed a Superior Court decision in 2011 without an opinion enforcing a household exclusion in Government Employees Insurance Co. v. Ayers.[67] The insured had two separate UIM policies issued by GEICO; he had one insuring his two motorcycles and the other insuring his two pick-up trucks.[68] The plaintiff did not waive stacking, but the policy insuring the trucks contained the household exclusion.[69] The plaintiff suffered injury while occupying his motorcycle, and GEICO denied coverage based on the household exclusion in the policy covering plaintiff's pick-up trucks.[70] Plaintiff argued the household exclusion constituted a de facto waiver of stacking, violating the MVFRL.[71] The Pennsylvania Superior Court disagreed, holding the plaintiff knew his policy limited the extent of its stacking.[72] In the Pennsylvania Supreme Court's one page per curiam affirmance, Justice Saylor issued a brief concurrence, noting he "would disapprove the utilization by an insurer of separate policies pertaining to multiple vehicles within the same household solely to subvert intra-policy stacking without any risk-based justification."[73]
6. Reichert
In 2012, our Court of Appeals addressed the household exclusion in Reichert v. State Farm Insurance Co. , enforcing a waiver of stacking UIM.[74] Plaintiff, who lived with her parents and her son, suffered injury driving her car.[75] She sought to stack her own UIM with both her parents' and her son's policies, all of which State Farm issued.[76] Her parents waived stacking; her son did not.[77] Her parents'
*434 policy contained a household exclusion.[78] Our Court of Appeals held the valid household exclusion precluded coverage, meaning "the applicability of stacking provisions need not be addressed."[79] Our Court of Appeals rejected the argument Justice Saylor's concurrence in Ayers "cast[ ] doubt on the rule that a valid household exclusion provision precludes coverage, and thereby prevents an insured from stacking UIM coverage."[80]
C. The Gallagher decision.
in Gallagher v. GEICO Indemnity Co. ,[81] plaintiff had two insurance policies, both from GEICO; one insuring only his motorcycle up to $ 50,000 in UIM, and the other insuring his two automobiles up to $ 100,000 in UIM.[82] He paid for stacked coverage on both policies.[83] He suffered injury in a motorcycle accident, collected under the tortfeasor's policy, collected $ 50,000 under his motorcycle policy, then sought to collect stacked UIM benefits under his automobile policy, which GEICO denied citing the household exclusion.[84]
In the Pennsylvania Superior Court's decision in Gallagher affirming the trial court's grant of summary judgment to the insurer, Judge Moulton held "we are bound by this Court's decision in Ayers ... [w]e are also bound by Baker. "[85] But Judge Moulton questioned whether Ayers and Baker would remain binding:
We recognize, however, that the inter-policy stacking issue in all three cases is both important and closely contested. As noted above, the Supreme Court was evenly split 3-3 in Ayers , and Baker did not produce a majority opinion. Given the significance of this legal issue and the divided nature of the Supreme Court in both Ayers and Baker , Gallagher may wish to petition the Pennsylvania Supreme Court for allowance of appeal.[86]
In a concurring opinion which all three judges joined, Judge Musmanno "[r]eluctantly" concurred.[87] He restated the view he had propounded in Ayers those who paid for inter-policy stacking on motorcycles "will be stripped of these benefits when they are injured while riding their motorcycles."[88] He concluded: "My reasoning is no less applicable in the instant situation, and the issue warrants review by our Supreme Court."[89]
On August 8, 2017, the Pennsylvania Supreme Court granted a Petition for Allowance of Appeal.[90] Appeals to the Pennsylvania Supreme Court are "not a matter of right, but of sound judicial discretion, and an appeal will be allowed only when there are special and important reasons therefor. "[91] The court agreed to decide two *435 issues:
(1) Whether the "household vehicle exclusion" violates Section 1738 of the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL) where GEICO issued all household policies and unilaterally decided to issue two separate policies, when the insured desired stacking, elected stacking, paid additional premiums for stacking and never knowingly waived stacking of underinsured motorist benefits?
(2) Whether the "household vehicle exclusion" impermissibly narrows or conflicts with the statutory mandates of the Pennsylvania Motor Vehicle Financial Responsibility Law and the evidence of record is that GEICO was fully aware of the risks of insuring a motorcycle in the same household as other family vehicles but unilaterally decided to write a separate motorcycle policy?[92]
The Pennsylvania Supreme Court had "special and important reasons" to decide the two issues. It granted the allowance of appeal after the Pennsylvania Superior Court unanimously recommended an appeal, found the issues "important and closely contested," and recognized "the significance of this legal issue and the divided nature of the Supreme Court in both Ayers and Baker. "[93]
On January 23, 2019, the Pennsylvania Supreme Court found the household exclusion violated the MVFRL because plaintiff never waived stacking and paid increased premiums, yet could not stack benefits as a result of the household exclusion.[94] The Pennsylvania Supreme Court found MVFRL section 1738 explicitly requires a waiver of stacking, but the household exclusion allows waiver of stacking without so much as a showing the insured "was even aware that the exclusion was part of the insurance policy."[95] And the Court noted GEICO could not argue it did not know the motorcycle existed, as GEICO "sold both of the policies to Gallagher and collected premiums for stacked coverage from him."[96] The court summarized its holding: "As in every case, we are deciding the discrete issue before the Court and holding that the household vehicle exclusion is unenforceable because it violates the MVFRL."[97]
Other language from Gallagher assists our analysis.
In its Gallagher decision, the Pennsylvania Supreme Court noted both Ayers and Baker did not raise stare decisis concerns because they did not constitute "binding precedent"- Ayers because the Pennsylvania Supreme Court issued a split-decision, per curiam affirmance;[98] and Baker because it constituted only a plurality decision.[99] As to Baker in particular, the Pennsylvania Supreme Court held "we are not disregarding any precedential impact of Baker because no position became law of the case."[100]
The Pennsylvania Supreme Court spoke to the potential impact of its decision:
We recognize that this decision may disrupt the insurance industry's current practices; however, we are confident *436 that the industry can and will employ its considerable resources to minimize the impact of our holding. For example, when multiple policies or insurers are involved, an insurer can require disclosure of all household vehicles and policies as part of its application process.[101]
This suggestion did not assuage the concerns of dissenting Justice Wecht, who questioned the impact of the decision:
After upending this Court's well-established precedent, the Majority's parting wisdom to Pennsylvania insurers is simply that they should use their "considerable resources" to mitigate the damage that the Court inflicts today. The Majority also suggests that, "when multiple policies or insurers are involved, an insurer can require disclosure of all household vehicles and policies as part of its application process." Of course, that would not fix the problems that the Majority's holding is sure to cause, since insureds routinely add new household vehicles-or even new household members-long after the "application process" has concluded. And, significantly, the Majority proposes no solution for the thousands of existing policies that insurers have issued in reliance upon the law as it existed prior to today.[102]
D. The Pennsylvania Supreme Court's Gallagher decision did not announce a new rule.
On January 23, 2019, the Pennsylvania Supreme Court held the household exclusion constituted a de facto waiver of the stacked UIM coverage the Pennsylvania General Assembly mandated in the MVFRL The Pennsylvania Supreme Court in Gallagher did not announce a new rule of Pennsylvania law because it did not express a "fundamental break from precedent" or modify a "previous opinion" of the Pennsylvania Supreme Court. Before Gallagher , the Pennsylvania Supreme Court issued a plurality opinion in Baker , a per curiam affirmance without an opinion in Ayers , and did not address the MVFRL in Colbert and Eichelman. The Pennsylvania Supreme Court's holding in Gallagher does not change binding Pennsylvania law. As a result, Gallagher applies to the MVFRL since its inception and applies to Mr. Butta's policy.
1. Baker is a plurality opinion without precedential impact and Ayers is a per curiam opinion without precedential impact.
As a plurality decision, Baker does not constitute binding precedent. Under Pennsylvania law, "[w]hile the ultimate order of a plurality opinion; i.e. an affirmance or reversal, is binding on the parties in that particular case, legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority."[103] Reliance on a plurality opinion is "problematic."[104]
The Pennsylvania Supreme Court explicitly disclaimed any precedential value of Baker in Gallagher , noting Baker "does not raise concerns regarding stare decisis because, as a plurality opinion, it does not constitute binding precedent."[105] "[C]ontrary to the Dissent's assertions," wrote the Gallagher majority, "we are not disregarding any precedential impact of Baker *437 because no position became law of the case ."[106] We find the Pennsylvania Supreme Court's language unambiguous: Baker is not binding precedent, Gallagher is the first majority opinion of the Pennsylvania Supreme Court to address whether a household exclusion "acts as a de facto waiver of stacked UIM coverage."[107]
In evaluating Gallagher , we begin with the Pennsylvania Supreme Court defines stare decisis: "The doctrine of stare decisis maintains that for purposes of certainty and stability in the law, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different."[108] "In this formulation the terms 'conclusion' and 'in the law' are particularly meaningful because stare decisis relates primarily to rules or pronouncements of law."[109] If Baker does not "raise concerns regarding stare decisis, " then, we can infer the Pennsylvania Supreme Court does not read Baker to constitute a "rule[ ] or pronouncement[ ] of law."[110] Coupled with the Pennsylvania Supreme Court's holding in Gallagher "no position became the law of [ Baker ]," we find Pennsylvania law does not view a plurality opinion as binding precedent.
Likewise, the Pennsylvania Supreme Court's per curiam decision in Ayers did not constitute binding precedent because the six Justices who decided Ayers split 3-3. "It is a universal rule that when a judicial or semi-judicial body is equally divided, the subject-matter with which it is dealing must remain in statu[s] quo."[111] The Ayers decision simply left the Superior Court's decision in status quo. To establish a new rule, the Pennsylvania Supreme Court must modify an earlier Pennsylvania Supreme Court decision, not a Superior Court decision. As with Baker , the Pennsylvania Supreme Court held "Ayers does not raise concerns regarding stare decisis because it does not constitute binding precedent"[112] because Ayers constituted a per curiam decision. Ayers is not binding precedent for the same reasons Baker is not binding precedent.
We are aware the Pennsylvania Supreme Court can establish a new rule when it "overrules, modifies, or limits any previous opinions"[113] of the Pennsylvania Supreme Court. And Gallagher seems to at least modify Baker and Ayers , which, though not binding precedent, are still "previous opinions." In resolving the conflict between what constitutes a new rule and the Pennsylvania Supreme Court's dismissal of the precedential value of Baker and Ayers , we are guided by the Pennsylvania Superior Court's decision in Commonwealth v. Owens , where it found a Pennsylvania Supreme Court decision abrogating a Pennsylvania Supreme Court plurality did not constitute a new rule.[114]
In Owens , the appellant filed a state habeas petition arguing his prison sentence should be reduced by twenty months for time served because he served twenty *438 months under house arrest with electronic monitoring before becoming incarcerated in state prison.[115] His appeal concerned interpretation of the Pennsylvania statute allotting credit for time served, 42 Pa.C.S.A. § 9760.[116] The Pennsylvania Supreme Court earlier addressed section 9760 in Commonwealth v. Chiappini , where a three-Justice plurality furthered a case-by-case approach to determining time served under section 9760.[117] Four Justices did not endorse the three-Justice plurality's approach, but one of those four, Justice Nigro, concurred in the plurality's ultimate conclusion.[118] Two months after the Owens appellant's sentencing, the Pennsylvania Supreme Court reinterpreted section 9670 in Commonwealth v. Kyle , where a majority held time spent on bail release under electronic monitoring does not count as time served under section 9670.[119] The Pennsylvania Supreme Court noted the Chiappini framework "lack[ed] precedential status" because it "was not endorsed by a majority of the Court."[120] The Owens appellant argued Kyle should not apply retroactively to his case because Kyle was decided two months after his sentencing.[121] The Pennsylvania Superior Court disagreed, finding Kyle applied retroactively because Kyle only abrogated a plurality decision:
Appellant has raised a valid inquiry here, but we are constrained to apply the Kyle rule retroactively, which precludes Appellant from receiving credit for the time that he spent under house arrest. As discussed above, Kyle sets a bright-line rule on this issue. Kyle specifically abrogated Commonwealth v. Chiappini , which permitted courts to consider crediting house arrest time on a case-by-case basis. Although Kyle might thus have signaled a new rule of law that could not be applied retroactively, Kyle specified that this element of Chiappini garnered only a mere plurality within a fractured Court.[122]
The Pennsylvania Superior Court's reasoning in Owens applies to the retroactivity of Gallagher. Baker and Ayers , just like Chiappini , do not have precedential status as plurality and per curiam decisions. Gallagher is the Pennsylvania Supreme Court's first precedential interpretation of MVFRL § 1738, just as Kyle is the Pennsylvania Supreme Court's first precedential interpretation of 42 Pa.C.S.A. § 9760. Neither opinion announced a new rule. We note Chiappini and Baker differ in one degree: in Chiappini , only three Justices endorsed the case-by-case approach; in Baker , four Justices agreed the household exclusion was enforceable. But we do not think this difference nullifies the Pennsylvania Supreme Court's express admonition in Gallagher "no position became law of [ Baker ]."[123] We do not find GEICO's arguments to the contrary persuasive.
GEICO argues Baker is binding precedent because the Pennsylvania Superior Court noted in Gallagher it was "bound by *439 Baker. "[124] We disagree, as we find the Pennsylvania Supreme Court's own interpretation of the precedential import of Baker -i.e., nil-overrides the Pennsylvania Superior Court's interpretation. This is particularly so where, as here, the Pennsylvania Supreme Court dismissed Baker 's precedential import in a footnote accompanying a sentence describing how the Pennsylvania Superior Court characterized Baker. Moreover, GEICO's interpretation of the Pennsylvania Superior Court's Gallagher language disregards the same court's repeated concerns about Baker 's vitality. All three Superior Court judges noted the "divided nature" of the Pennsylvania Supreme Court on the issue, and explicitly counseled an appeal of their own ruling. Judge Musmanno, in a unanimous concurrence, opined the issue warranted Supreme Court consideration. The Pennsylvania Superior Court's language it was "bound by Baker " is simply an acknowledgment of the Pennsylvania Supreme Court's "ultimate order" in Baker.
GEICO next argues our Court of Appeals in Reichert applied Pennsylvania law as a rule. We are mindful our Court of Appeals addressed a "valid household exclusion provision" which "precludes coverage" as a "rule. "[125] But we do not interpret our Court of Appeals' use of the word "rule" in describing earlier Pennsylvania caselaw to mean Gallagher established a new rule, as we decline to read so much into one word from an unpublished opinion which came almost seven years before Gallagher. Moreover, as we sit in diversity, it is our duty to "predict" how the Pennsylvania Supreme Court would rule on the retroactivity of Gallagher. We must prioritize the Pennsylvania Supreme Court's own language from the very case we decide to apply to Mr. Butta's case.
GEICO also argues the Pennsylvania Supreme Court made Gallagher prospective by noting:
We recognize that this decision may disrupt the insurance industry's current practices; however, we are confident that the industry can and will employ its considerable resources to minimize the impact of our holding. For example, when multiple policies or insurers are involved, an insurer can require disclosure of all household vehicles and policies as part of its application process.[126]
GEICO argues this note is forward-looking because the Pennsylvania Supreme Court wrote the "industry can and will " employ its resources to minimize the holding's impact, and then provided an example of a change the industry can make in the future. But a contrary reading of the footnote is equally plausible. The Pennsylvania Supreme Court also noted the industry "can " use its resources to minimize the impact and noted the decision may disrupt the industry's "current " practices. Mindful of the Pennsylvania Supreme Court's dismissal of Baker and Ayers 's precedential value, we decline to adopt GEICO's interpretation of this footnote.
GEICO argued we should not treat Baker as a plurality because four Justices-a majority-employed the same rationale in upholding the household exclusion. GEICO points to a later opinion of the Pennsylvania Supreme Court in which it noted a "majority of this Court [in Baker ] held that the MVFRL's stacking provisions did not preclude application of the household *440 exclusion."[127] This statement does not affect our reasoning, as we find a majority only agreed on the Pennsylvania Supreme Court's "ultimate order."[128] In Baker , Justice Saylor concurred "in the result only." He disagreed with the plurality's view Colbert and Eichelman directed the result in Baker. He instead concluded the General Assembly would have directly invalidated long-standing policy exclusions had it wanted to invalidate them. Justice Saylor did not reach "stacking questions."[129] Mindful of the Pennsylvania Supreme Court's directive "no position became law of [ Baker ]," we decline to parse Justice Saylor's concurrence to discern exactly how he may have agreed with the plurality. GEICO also argues Baker established precedent based on Commonwealth v. Bethea , where the Pennsylvania Supreme Court noted "only the result" of a plurality opinion "carries precedential weight."[130] Again, we reiterate it is our duty to "predict" whether the Pennsylvania Supreme Court would retroactively apply Gallagher. We must prioritize the Pennsylvania Supreme Court's language from Gallagher over potentially contradictory language from Bethea sixteen years earlier. We predict, based on the Pennsylvania Supreme Court's language in Gallagher itself, the court would retroactively apply the case.
2. Gallagher did not overrule Colbert or Eichelman , which addressed different issues than Gallagher , and Riley does not control this case.
The Pennsylvania Supreme Court in Gallagher did not overrule or modify Colbert or Eichelman , as neither opinion considered the same argument made in Gallagher. Both Colbert and Eichelman addressed whether household exclusions violated public policy. They did not address whether a household exclusion "acts as a de facto waiver of stacked UIM coverage." Neither opinion mentioned "stacking" once. The Gallagher majority did not cite Eichelman , and cited Colbert only for the general proposition "insurance contracts are invalid and unenforceable if they conflict with statutory mandates because contracts cannot alter existing laws."[131] We are mindful the Baker plurality noted Colbert and Eichelman "direct[ed]" the result in Baker -but four of seven Justices disagreed, finding both Colbert and Eichelman distinguishable from Baker. As a result, Gallagher 's overruling *441 of Baker does not bear on the vitality of Colbert and Eichelman.
Likewise, Riley does not control our decision here because Riley did not address whether the household exclusion constituted a de facto waiver of stacked coverages.[132]
E. Even assuming Gallagher established a new rule, we would deny GEICO's Motion as we could not decide as a matter of law whether Gallagher applies retroactively without evidence.
We are mindful whether Gallagher established a new rule is a "valid inquiry."[133] At oral argument, Mr. Butta's counsel admitted voluntarily dismissing Mr. Butta's first lawsuit because he thought the result in Gallagher could clarify ambiguity in the law and a federal court may apply Ayers while the Pennsylvania Supreme Court decided Gallagher.
But even assuming Gallagher established a new rule, we would not be able to properly exercise our judicial discretion to determine whether Gallagher should apply retroactively without discovery. Under Pennsylvania law, we must consider whether a new "rule" should be applied retroactively including if "the parties will be unfairly prejudiced because they relied on the old rule."[134] GEICO invests most of its briefing and argument attempting to persuade us it is inequitable to apply Gallagher to Mr. Butta's policy because the insurance industry had viewed the holding of Baker as "well-settled for at least a decade before it was overruled in Gallagher."[135] But GEICO presents no evidence of its, or the industry's, reliance on Pennsylvania caselaw other than its own say-so. We cannot evaluate the extent of the unfair prejudice to GEICO without evidence. As a result, even assuming we found Gallagher defined a new rule of Pennsylvania law, we cannot discern unfair prejudice to GEICO by applying Gallagher to Mr. Butta's contract because GEICO relied so heavily on plurality and per curiam opinions of the Pennsylvania Supreme Court. We will not deprive Mr. Butta of the Pennsylvania Supreme Court's interpretation of the MVFRL because the insurance industry relied on non-precedential opinions.
*442 III. Conclusion
The Pennsylvania Supreme Court's definition of Pennsylvania law in Gallagher applies to this case involving stacking under insurance policies issued by the same insurer to family members in the same house. The Pennsylvania Supreme Court's Gallagher holding did not establish a "new rule." Its interpretation of the MVFRL vis-a-vis household exclusions is part of the MVFRL from its inception. As GEICO's only argument in its motion to dismiss is Gallagher does not apply to this case, we deny GEICO's motion.

Id. at 36.

ECF Doc. No. 1 at 9 ¶ 2.

Id. at 17 ¶ 46.

Id. at 12 ¶¶ 21-22.

Id. at 14-15 ¶¶ 31-32.

Id. at 10 ¶¶ 7-9.

Id. at 13-14 ¶ 27; id. at 18 ¶ 49.

ECF Doc. No. 7 (Ex. A) at 48 ¶ 2 (emphases omitted).

Id. at 11 ¶¶ 12-14.

Id. at 12 ¶¶ 17-19.

Id. at 12 ¶¶ 22-23.

Id. at 13 ¶ 24.

Id. at 13 ¶ 26.

Id. (emphases in original).

Id.

Mr. Butta first sued GEICO on April 10, 2018. See Butta v. GEICO Cas. Ins. Co. , No. 18-1979 (E.D. Pa.), ECF Doc. No. 1. GEICO removed the case on May 10, 2018 and moved to dismiss on May 17, 2018. Id. at ECF Doc. No. 3. Before we ruled on GEICO's motion, Mr. Butta voluntarily dismissed on June 22, 2018. Id. at ECF Doc. No. 12. We dismissed Mr. Butta's lawsuit without prejudice. Id. at ECF Doc. No. 13.

201 A.3d 131 (Pa. 2019).

When considering a motion to dismiss "[w]e accept as true all allegations in the plaintiff's complaint as well as all reasonable inferences that can be drawn from them, and we construe them in a light most favorable to the non-movant." Tatis v. Allied Insterstate, LLC , 882 F.3d 422, 426 (3d Cir. 2018) (quoting Sheridan v. NGK Metals Corp. , 609 F.3d 239, 262 n.27 (3d Cir. 2010) ). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal , 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting Bell Atl. Corp. v. Twombly , 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly , 550 U.S. at 556, 127 S.Ct. 1955 ). Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "it must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;' " (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;' " and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Connelly v. Lane Constr. Corp. , 809 F.3d 780, 787 (3d Cir. 2016) (quoting Iqbal , 556 U.S. at 675, 679, 129 S.Ct. 1937 ).

75 Pa.C.S.A. § 1738(a).

Id. § 1738(b).

Id. § 1738(d).

See Erie Ins. Exch. v. Baker , 601 Pa. 355, 972 A.2d 507, 509 (2008) (plurality opinion), abrogated by Gallagher , 201 A.3d at 138.

Gallagher , 201 A.3d at 138.

ECF Doc. No. 7.

Berrier v. Simplicity Mfg., Inc. , 563 F.3d 38, 45-46 (3d Cir. 2009).

Id. at 46 (alteration in original) (internal quotations omitted).

Passarello v. Grumbine , 624 Pa. 564, 87 A.3d 285, 307 (2014).

Id. at 308.

In re L.J. , 622 Pa. 126, 79 A.3d 1073, 1087 (2013).

Fiore v. White , 562 Pa. 634, 757 A.2d 842, 848 (2000).

Id.

Commonwealth v. Eller , 569 Pa. 622, 807 A.2d 838, 844 (2002).

Davis ex rel. Davis v. Gov't Emps. Ins. Co. , 775 A.2d 871, 875 (Pa. Super. Ct. 2001) (citing Blackwell v. Com., State Ethics Comm'n , 527 Pa. 172, 589 A.2d 1094, 1098-99 (1991) ).

Blackwell , 589 A.2d at 1099.

Passarello , 87 A.3d at 307.

551 Pa. 558, 711 A.2d 1006, 1010 (1998).

Id. at 1007.

Id. at 1010.

Id.

572 Pa. 82, 813 A.2d 747 (2002).

Id. at 749.

Id.

Id.

Id. at 754.

Id.

352 F.3d 804, 811 (3d Cir. 2003).

Id. at 805.

Id. at 806.

Id. at 810.

Id.

601 Pa. 355, 972 A.2d 507 (2008) (plurality opinion), abrogated by Gallagher , 201 A.3d at 138.

Id. at 509.

Id.

Id.

Id.

Id. at 511.

Id. at 514.

Id. at 513 (emphasis in original).

Id. at 514.

Id. (Saylor, J., concurring).

Id.

Id. at 515 (Baer, J., dissenting).

Id. (Saylor, J., concurring).

Id.

Id.

Id.

610 Pa. 205, 18 A.3d 1093, 1094 (2011) (per curiam), abrogated by Gallagher , 201 A.3d at 138.

Gov't Emps. Ins. Co. v. Ayers , 955 A.2d 1025, 1027 (Pa. Super. Ct. 2008), abrogated by Gallagher , 201 A.3d at 138.

Id.

Id.

Id. at 1029.

Id. at 1030 (quoting Nationwide Mut. Ins. Co. v. Roth , No. 04-612, 2006 WL 3069721, at *6 (M.D. Pa. Oct. 26, 2006) ).

Ayers , 18 A.3d at 1094 (Saylor, J., concurring).

484 Fed. App'x 724, 726 (3d Cir. 2012).

Id. at 725.

Id.

Id.

Id.

Id. at 726.

Id. (citing Nationwide Mut. Ins. Co. v. Riley , 352 F.3d 804, 811 (3d Cir. 2003) ; Baker , 972 A.2d at 511 ; Colbert , 813 A.2d at 754 ).

201 A.3d at 138.

Id. at 132-33.

Id. at 133.

Id.

Gallagher v. GEICO Indem. Co. , No. 352 2016, 2017 WL 394337, at *3 (Pa. Super. Ct. Jan. 27, 2017).

Id. (emphases in original).

Id. (Musmanno, J., concurring).

Id. (quoting Ayers , 955 A.2d at 1031 (Musmanno, J., dissenting)).

Id.

Gallagher v. GEICO Indem. Co. , 642 Pa. 420, 170 A.3d 974, 974-75 (2017) (per curiam).

Pa.R.A.P. 1114(a) (emphasis added).

Gallagher , 170 A.3d at 974-75.

Gallagher , 2017 WL 394337, at *3 (emphasis omitted).

Id. at 138.

Id.

Id.

Id. at 138 n.8.

Gallagher , 201 A.3d at 134 n.3.

Id. at 135 n.5.

Id.

Id. at 138 n.6.

Id. at 143 (Wecht, J., dissenting) (internal citations omitted).

In Interest of O.A. , 552 Pa. 666, 717 A.2d 490, 496 n.4 (1998).

Pitt Ohio Express v. W.C.A.B. (Wolff) , 590 Pa. 99, 912 A.2d 206, 208 (2006).

Gallagher , 201 A.3d at 135 n.5.

Id. (emphasis added).

Gallagher , 201 A.3d at 138.

In re Angeles Roca First Judicial Dist. Phila. Cty. , 643 Pa. 585, 173 A.3d 1176, 1187 (2017) (internal quotations omitted).

Id.

Id.

Creamer v. Twelve Common Pleas Judges , 443 Pa. 484, 281 A.2d 57, 58 (1971) (internal quotations omitted).

Gallagher , 201 A.3d at 134 n.3.

L.J. , 79 A.3d at 1087.

936 A.2d 1090, 1092-93 (Pa. Super. Ct. 2007).

Id. at 1091.

Id.

566 Pa. 507, 782 A.2d 490, 501 (2001) (plurality opinion), abrogated by Commonwealth. v. Kyle , 582 Pa. 624, 874 A.2d 12 (2005).

Id. at 502 (Nigro, J., concurring); see Kyle , 874 A.2d at 20.

Kyle , 874 A.2d at 20.

Id.

Owens , 936 A.2d at 1092.

Id. at 1092-93 (emphasis added) (citations omitted).

Gallager , 201 A.3d at 135 n.5.

Gallagher , 2017 WL 394337, at *3.

Reichert , 484 Fed. App'x at 726 (emphasis added).

Gallagher , 201 A.3d at 138 n.6.

Williams v. GEICO Gov't Emps. Ins. Co. , 613 Pa. 113, 32 A.3d 1195, 1208 (2011) (emphasis added).

See O.A. , 717 A.2d at 496 n.4.

Baker , 972 A.2d at 515 (Saylor, J., concurring).

574 Pa. 100, 828 A.2d 1066, 1073 (2003). Bethea appears inconsistent with the Pennsylvania Supreme Court opinion it cites, In Interest of O.A. , where the Pennsylvania Supreme Court explained "legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority." O.A. , 717 A.2d at 496 n.4 ("The dissent asserts that we are confusing the 'conclusion' of a plurality decision, which it finds to be precedential, with the reasoning of such decision, which it apparently would agree, is non-precedential. While the ultimate order of a plurality opinion; i.e. an affirmance or reversal, is binding on the parties in that particular case, legal conclusions and/or reasoning employed by a plurality certainly do not constitute binding authority. Indeed, an order may be deemed a 'conclusion,' but the conclusion to which we refer in this opinion is not the order of the plurality, but the specific legal conclusion espoused by the plurality. Accordingly, notwithstanding the dissent's attempted distortion of our point here, we reiterate that the plurality's position in Jones , that corroboration of an informant's tip is not necessary if he has a past history of reliability, does not constitute binding authority." (emphasis in original)).

Gallagher , 201 A.3d at 137 (citing Colbert , 813 A.2d at 751 ).

We could have predicted the Pennsylvania Supreme Court would have invalidated the household exclusion based on the MVFRL's waiver provisions even if Gallagher did not exist. The only pre-Gallagher cases in which the insured had separate policies from the same insurer, like Mr. Butta, are Riley , Ayers , and Reichert . Riley , however, addressed whether the household exclusion clauses violated public policy, not whether the household exclusion acts as a de facto waiver of stacking. Riley , 352 F. 3d at 811. Our Court of Appeals did not find the plaintiff's policy being issued by the same company affected its decision as applicable today; but our Court of Appeals did not address the same argument the plaintiffs made in Baker and Ayers. As a result, Ayers and Reichert are the only cases we cannot distinguish from Mr. Butta's situation. Neither decision binds us. Ayers is a Pennsylvania Superior Court opinion which the Pennsylvania Supreme Court left in "status quo" with a per curiam affirmance. See Creamer , 281 A.2d at 58. Reichert is an unpublished, non-precedential decision. See Jamison v. Klem , 544 F.3d 266, 278 n.11 (3d Cir. 2008) ("We have steadfastly attempted to discourage District Courts as well as attorneys from relying on nonprecedential opinions of this court."). The General Assembly has unambiguously made stacking the default when "more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage" unless an insured waives it. 75 Pa.C.S.A. § 1738. We may have predicted the Pennsylvania Supreme Court would find the household exclusion in Mr. Butta's parents' policy acted as a de facto waiver of stacking.

Owens , 936 A.2d at 1092.

Passarello , 87 A.3d at 307.

ECF Doc. No. 7 at 13.